JET CHARTER SERVICE, INC.,
Plaintiff–Appellant,

v.

W. KOECK, Progress Aviation (U.S.A.),
Inc., Progress Aviation, S.A., Jean
Caillet, Defendants,

Banque Paribas (Suisse), S.A.,
Defendant–Appellee.

No. 89–5516.

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1990.

Stanley J. Bartel, Miami, Fla., for plaintiff-appellant.

David S. Patterson, Breed, Abbott & Morgan, New York City, for defendant-appellee.

Before CLARK, Circuit Judge, MORGAN and RONEY *, Senior Circuit Judges.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

CLARK, Circuit Judge:

Plaintiff Jet Charter Service, Inc. ("Jet Charter") appeals the district court's grant of defendant Banque Paribas (Suisse) S.A.'s ("Paribas") motion to dismiss for lack of personal jurisdiction. We affirm.

In July of 1986, Jet Charter filed a multiple count complaint against five defendants, including defendant Paribas. The charges in the complaint arise from Jet Charter's sale of two DC 10–40 aircraft to defendant Progress Aviation, S.A. ("Progress"), a Swiss corporation, in November of 1985. Under the purchase agreement, the sale price of $26,473,500 was to be distributed as follows: $23,000,-000 paid at closing to Boeing, the manufacturer, $673,500 paid at closing to Northwest Airlines to release its mechanic's lien for previous repairs done on the aircraft, $1,000,000 paid at closing to Jet Charter, and $500,000 paid to Jet Charter upon delivery of the aircraft to Progress. The remaining $1.3 million of the purchase price was to be retained by Progress to be applied to make repairs necessary to bring the aircraft up to the condition Jet Charter had agreed they would be in at the time of delivery. After the necessary repairs were made, the remaining money would be paid to Jet Charter.

The purchase agreement required Progress to open a letter of credit in favor of Jet Charter to secure Progress's obligation to pay the $500,000 upon delivery and the remaining balance of $1.3 million. The terms of the letter of credit were to provide that Progress could first draw on the credit to pay for the necessary repairs, and then the remaining balance could be drawn on by Jet Charter. Progress contracted with defendant Paribas, a Swiss bank, to open the letter of credit required by the purchase agreement.

On the day of closing, defendant Jean Caillet, an officer of defendant Paribas, attended the closing in Miami, Florida. When Jet Charter asked whether the letter of credit had been opened, Caillet produced a letter purporting to confirm "the opening of an irrevocable Letter of Credit in the amount of US $1,800,000 ... in accordance with the terms of the Restated Purchase Agreement of 13th November 1985 between Jet Charter Services, Inc. and Progress Aviation S.A., as amended by the first amendment thereto." R5–129, Exh. B. Jet Charter was not satisfied with this letter, and asked that another letter be drafted by Caillet. Caillet obliged by drafting a letter that represented that Paribas had opened an irrevocable letter of credit in the amount of U.S. $1,800,000 in favor of Jet Charter, that an amended letter of credit would be delivered to Jet Charter in Miami, Florida by 5:00 p.m. EST on November 26, 1985 and that the letter of credit would be payable upon presentation to "Banque Paribas in Miami, Florida."[1] The letter further represented that the letter of credit would "be a clean letter of credit other than specifically reciting terms and conditions from that certain restated amended purchase agreement of November 13, 1985 between Jet Charter Services, Inc. and Progress Aviation S.A. as amended by the first amendment thereto." R5–129, Exh. C.

On the basis of these assurances, Jet Charter assigned its interest in the aircraft to Progress. The aircraft were delivered to Progress as anticipated in the purchase agreement, and a letter of credit was issued, although Jet Charter rejected it as not conforming to the terms of the purchase agreement. Progress had numerous repairs made to the aircraft, and the main dispute in this case revolves around Jet Charter's contention that Progress made more repairs than were authorized by the

1. The "Banque Paribas" in Miami, Florida referred to in this letter of assurance is not a branch, subsidiary, nor affiliate of Paribas. It is a branch office of Banque Paribas, a French bank organized under and regulated by the laws of France. The district court held that Banque Paribas and Banque Paribas (Suisse), S.A. are "distant cousins" due to their common ownership by a bank holding company, Compagnie Financiere de Paribas. However, the court found that neither bank exercises any control over the other and each bank maintains separate records, and is governed by different directors and officers. See R2–58, R2–47 (Affidavit of Bernard Chevassut on behalf of Banque Paribas (Suisse), S.A.).

purchase agreement, thus reducing Jet Charter's net profit from the sale in violation of the purchase agreement.

Count One of the complaint alleges that defendant W. Koeck dominates and controls defendants Progress and its related domestic corporation, Progress Aviation (U.S.A.), Inc. (referred to collectively as "the Progress defendants"), and that these defendants breached the purchase agreement by charging repairs that were not required under the purchase agreement against the $1.3 million portion of the purchase price. Counts Two and Three allege that the Progress defendants are obligated to repay Jet Charter for certain insurance premiums and for conversion of certain aircraft baggage containers and other equipment. Liberally construed, Count Four alleges that the letters provided by Caillet at the closing comprise a contract between Paribas and Jet Charter, and that Paribas breached that contract by failing to deliver the letter of credit by the stated deadline, and by delivering a letter that did not conform to the terms of the purchase agreement or the terms of the letter contract. Count Five alleges that the Progress defendants and defendant Caillet created a scheme to defraud Jet Charter by falsely leading Jet Charter to believe a letter of credit had been opened so that Jet Charter would complete the sale.

Over two years after the complaint was filed, on September 9, 1988, the district court *sua sponte* dismissed without prejudice Jet Charter's claims against defendant Koeck because Jet Charter had been unable to serve him with process. R5–121. On December 21, 1988, the court granted defendant Progress's motion to dismiss for failure to effect service of process. In that same order, the district court granted defendant Paribas's motion to dismiss for lack of personal jurisdiction, while denying defendant Caillet's motion to dismiss. R5–134. On April 26, 1989, the court dismissed the claims against the two remaining defendants, Caillet and Progress Aviation (U.S.A.), Inc., based on joint stipulations

for voluntary dismissal without prejudice. R5–144, 145. As a result, the driving issue behind this litigation, whether Progress breached the purchase agreement by making excessive repairs to the aircraft, was never adjudicated by the district court.

In the present case, Jet Charter appeals only the portion of the district court's order of December 21, 1988 dismissing defendant Paribas.[2] Jet Charter argues on appeal that the district court has personal jurisdiction over defendant Paribas under subsections (1)(a), (1)(b), (1)(f), and (1)(g) of the Florida long-arm statute, Fla.Stat.Ann. § 48.193 (West Supp.1989). Paribas claims that Jet Charter has failed to provide sufficient facts to prove the existence of jurisdiction under any of these subsections.

■■■ Our review of a district court's determination of the existence or non-existence of personal jurisdiction involves evaluating the same documentary evidence relied on by the district court, and therefore we review such determinations *de novo*. *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 916 (11th Cir.1989). In a diversity action, a federal court may exercise personal jurisdiction over non-resident defendants only to the extent permitted by the forum state's long-arm statute. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir.1983).

■■■ Under Florida law, a plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction. When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents. *Sims v. Sutton*, 451 So.2d 931 (Fla.Dist.Ct. App.1984); *accord Norwest Bank Minneapolis, N.A. v. American Centennial Ins. Co.*, 493 So.2d 101 (Fla.Dist.Ct.App.1986);

---

2. At the time it was issued, that order was an interlocutory order because the case was still pending against two other defendants. However, the April 26, 1989 order dismissing the action against the two remaining defendants renders the December 21, 1988 order final.

*Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968 (11th Cir. 1986). Our review of the record in this case reveals no basis for finding that the district court had jurisdiction over defendant Paribas.

Even if the requirements of a state long-arm statute are met, personal jurisdiction cannot be exercised over a defendant that does not have sufficient "minimum contacts" with the forum state to satisfy the requirements of due process.[3] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *accord Venetian Salami Co. v. Parthenais*, 554 So.2d 499 (Fla.1989) (Holding that "mere proof of any one of the several circumstances enumerated in [Florida's long-arm statute] ... does not automatically satisfy the due process requirement of minimum contacts.").

▮▮▮ The existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process. *Burger King*, 471 U.S. at 462, 105 S.Ct. at 2174, 85 L.Ed.2d at 528. Due process requires that the defendant's conduct and connection with the forum state be such that the defendant should reasonably anticipate being called into court there. Random, fortuitous or attenuated contacts, or contacts produced through the unilateral activity of a third person are insufficient to reasonably indicate to the defendant that he should anticipate being subject to personal jurisdiction of the forum state's courts. *Id.* at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542.

In support of its argument that the district court has jurisdiction over Paribas, Jet Charter alleges in its complaint and through the affidavit of Gabriel D'La Rotta, President of Jet Charter, the following contacts Paribas had with the state of Florida. Most importantly, Paribas agreed to provide a letter of credit in favor of Jet Charter, a Florida entity, which was an essential part of the aircraft sales transaction. Furthermore, Paribas's bank officer, Caillet, accompanied Progress when Progress first met with D'La Rotta in Miami to propose the sale of the aircraft, and Caillet provided D'La Rotta with a copy of a letter confirming that Paribas had committed to lending Progress the necessary funds for the purchase of the aircraft. When D'La Rotta and his wife subsequently travelled to Geneva, Caillet took them to lunch, and Caillet was present on behalf of Paribas at the closing of the sale in Miami, Florida. Paribas also agreed in the letter assurances given at the closing to deliver the letter of credit to Miami, Florida.

We find these circumstances qualitatively different from those presented in *Burger King*. In that case, the defendant franchisee entered into a contract which by its terms created a franchise relationship established in Florida, and which called for the franchisee to deliver all payments of all required fees and all required notices to the franchisor in Miami, Florida. Furthermore, the contract provided that the franchisee's operations would be subject to extensive regulations and inspections ultimately controlled by the Miami headquarters of the franchisor. The Court held that in light of the defendant franchisor's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the quality and nature of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Burger King*, 471 U.S. at 480, 105 S.Ct. at 2186, 85 L.Ed.2d at 528 (citations omitted).

In contrast, the circumstances of the present case are insufficient under the Fourteenth Amendment to establish personal jurisdiction of the Florida courts over defendant Paribas. Paribas's contacts with Florida arose out of its Swiss customer's

---

**3.** With respect to determining whether a state court may assert personal jurisdiction, the requirements of due process apply equally to foreign persons or corporations such as Paribas as to domestic corporations. *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (holding that Constitution prohibited Texas from asserting personal jurisdiction over Colombian corporation where corporation's contacts with Texas were insufficient to satisfy due process clause of Fourteenth Amendment).

request to open a letter of credit to facilitate this transaction. Although Caillet went to Florida twice on behalf of Paribas, neither visit was essential to Paribas's involvement in the transaction.[4] Paribas could have opened the letter of credit, and provided confirmation of its opening, from its office in Geneva. Paribas, unlike the franchisee in *Burger King*, did not enter into a long-term contractual agreement with Jet Charter.[5] Paribas's long-term contract was with its Swiss customer, Progress. We find that Paribas's brief, non-essential contact with Florida soil, coupled with its involvement in a sales transaction initiated by a third-party, a Swiss company, in which it made no long term contractual commitments to the Florida seller, are insufficient to indicate to Paribas that it should expect to be haled into Florida's courts over disputes that arise out of the sales transaction. *Leney v. Plum Grove Bank*, 670 F.2d 878, 881 (10th Cir.1982). *See also Froning & Deppe, Inc. v. Continental Illinois Nat'l Bank & Trust Co.*, 695 F.2d 289, 292 (7th Cir.1982) (Routine remittal of commercial instruments such as checks or letters of credit incidentally bound for the forum state insufficient to establish minimum contacts.)

In *Leney*, an Illinois bank issued a letter of credit, knowing it would be used by its Illinois customer in connection with the sale of real and personal property to a Colorado corporation. When the Colorado beneficiary presented the credit for payment, the Illinois bank refused to honor it. The Colorado beneficiary brought suit in federal district court in Colorado against the Illinois bank, alleging wrongful dishon-

or of the letter of credit. On appeal, the Tenth Circuit found that the mere issuance of a letter of credit which the issuing bank reasonably should have anticipated to be used by a Colorado beneficiary was an insufficient basis upon which to assert personal jurisdiction over the issuing bank. *Leney*, 670 F.2d at 881. The court reasoned that

> it is unfair to burden an issuing bank with having to defend litigation over a letter of credit in any state in which the bank could reasonably expect the credit to be used. A letter of credit is 'an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.' U.C.C. § 5–103. By issuing the letter of credit the bank substitutes its credit for that of its customer. The bank's obligation under the letter of credit is independent of the underlying sales contract.... If we were to hold that jurisdiction is proper in Colorado on the facts of the instant case we would have to subject any bank that issues a letter of credit to suit in any state in which the bank could expect the credit to be used....

*Id.*

Although Paribas's agent set foot in Florida twice in connection with the transaction, and gave assurances that the bank would provide the necessary letter of credit, Jet Charter's claim against Paribas in the present case is essentially the same as the Colorado beneficiary's claim against

---

**4.** In his affidavit, Caillet explains that Paribas loaned Progress $24.5 million to purchase the aircraft from Jet Charter, and that Caillet attended the closing as a loan officer of Paribas to see that the closing went smoothly and that the money and relevant title documents were properly exchanged. R5–125. In response to this explanation, Gabriel D'La Rotta, President of Jet Charter, contends that Caillet's purpose in attending the closing was to deliver the letter of credit required by the purchase agreement. R5–129. Assuming this is true, Paribas was, not contractually obligated to Jet Charter to personally deliver the letter of credit at closing, and the letter of credit could have been delivered through some other means. Thus, the fact that

Caillet attended the closing, assuming one of the purposes for being there was to deliver the letter of credit, is irrelevant for purposes of establishing personal jurisdiction. Further, Paribas had no obligation whatsoever to Jet Charter. Its obligation was to furnish a letter of credit for its customer, Progress.

**5.** Assuming Paribas entered into any agreement at all with Jet Charter, it would only be to deliver a conforming letter of credit to Jet Charter in Miami, Florida by a certain time, as evidenced by the letter of assurance signed by Caillet at closing.

the Illinois bank in *Leney*. Jet Charter claims that Paribas failed to issue a letter of credit that conformed to the required terms, while the Colorado beneficiary claimed that the Illinois bank failed to honor the letter of credit according to its terms. As in *Leney*, Paribas's contact with the forum state was initiated by its customer, a nonresident of the forum state. Paribas, like the Illinois bank, knew that the letter of credit would be used by a resident of the forum state. Despite Jet Charter's insistence that the confirmation of the opening of a letter of credit was a material requirement for the closing, there is no evidence that Paribas contractually obligated itself to send an agent to the closing, or to send an agent during the preliminary negotiations. Paribas, for its own reasons, decided to send Caillet to Florida. Nevertheless, Paribas's participation in the deal would not have been materially different if it had used the mails or a correspondent bank to confirm the issuance of the letter of credit. Under these circumstances, the requirements of due process are not met for the purposes of asserting personal jurisdiction over Paribas in Florida courts.

For the foregoing reasons, we find that Jet Charter has failed to sustain its burden of proving that personal jurisdiction over defendant Paribas exists in Florida.[6] The district court order dismissing Jet Charter's claims against defendant Paribas for lack of personal jurisdiction is therefore AFFIRMED.

---

6. Having determined that the exertion of personal jurisdiction over defendant Paribas in this case would violate due process, we need not consider Jet Charter's arguments that the district court erred in holding that the requirements of Florida's long-arm statute are not met in this case. *Burger King*, 471 U.S. at 462, 105 S.Ct. at 2174, 85 L.Ed.2d at 528; *see also Venetian Salami*, 554 So.2d 499 (Fla.1989).