**RZS HOLDINGS, AVV, Plaintiff,**

v.

**COMMERZBANK, AG Defendant.**

**No. CIV. 03–697–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 2, 2003.

---

George Rubert Doumar, Dilworth Paxson LLP, Washington, DC, for Plaintiff.

Mark White Byrum, Jr., The Bryum Law Office, PC, Alexandria, VA, for Defendant.

### *MEMORANDUM OPINION*

CACHERIS, District Judge.

This matter is before the Court on the defendant's motion to dismiss.

### I. Background

This dispute arises out of the dishonor of a letter of credit issued in connection with a multi-party international commercial transaction. In this action, plaintiff RZS Holdings, AVV ("Plaintiff" or "RZS"), a Virginia partnership with its principal place of business in Virginia, was the beneficiary of a letter of credit. In fact, RZS brings this suit against defendant Commerzbank, AG ("Commerzbank" or "Defendant"), a German organization with its principal place of business in Germany, for wrongfully dishonoring that letter of credit.

This letter of credit dispute is rooted in a transaction between RZS and the state oil company of Venezuela PdVSA, Petroleos, S.A. ("PdVSA"). In that underlying transaction, RZS agreed to provide PdVSA with over 400,000 barrels of gasoline, which RZS would acquire from Vitol, S.A., a Dutch petroleum concern. According to the underlying contract, RZS was required to ship the gasoline to PdVSA in Venezuela. In return, PdVSA would have a letter of credit issued for the benefit of RZS.

Specifically, PdVSA contracted with Banesco Banco Universal ("Banesco"), a Venezuelan bank to issue a letter of credit for the benefit of RZS. The letter of credit provided that it could only be confirmed by Commerzbank and drawn upon at Commerzbank's branch in London, England.

On April 10 and 11, 2003, RZS attempted to draw on the letter of credit at Commerzbank's London office by presenting certain documents required under the terms of the letter of credit. Commerzbank refused to honor the letter of credit, however, claiming that the documents presented did not comply with the requirements of the letter of credit agreement. RZS now brings this suit generally asserting that Commerzbank's dishonor was wrongful. In response, Commerzbank files this motion to dismiss the Complaint for lack of personal jurisdiction or in the alternative under the doctrine of *forum non conveniens*. RZS opposes this motion.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks the requisite personal jurisdiction. To establish jurisdiction over a non-resident, this Court must first consider whether jurisdiction is authorized by Virginia law. Then, having found statutory authorization, the Court must consider whether the exercise of personal jurisdiction is consistent with traditional notions of fair play and due process. *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985). Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990). It may, however, be possible for the contacts of a non-resident defendant to satisfy due process but not meet the specific

grasp of a Virginia long-arm statute provision. *See DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D.Va.1996). As always, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

## III. Analysis

### A. Waiver of Personal Jurisdiction Defense

Federal Rule of Civil Procedure 12 specifically states that a defense of lack of personal jurisdiction is waived if it is not raised at the same time as all other Rule 12 defenses. *See* Fed.R.Civ.P. 12(g), (h). The Fourth Circuit has fleshed out this rule further by stating that "Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002) (citing *Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 46 (4th Cir.1968)).

In this case, Plaintiff filed its Complaint on May 16, 2003. On May 30, 2003, Plaintiff filed a nearly identical Complaint in this Court stating the same claims against the same defendant. Faced with the awkward presentation of these two nearly identical suits, Defendant filed a motion to stay one of the cases or in the alternative to set July 18, 2003 as the proper date for filing a responsive pleading to the second-filed of these two actions. In that June 13, 2003 motion, Defendant requested in a footnote that "[t]his motion should also be treated as Motion to Strike this Complaint under Rule 12(f) as a redundant pleading."

Plaintiff argues that because the June 13, 2003 motion stated that it should be

construed as a Rule 12(f) motion to strike, it was a motion under Rule 12, at which time Defendant was required to raise a defense of lack of personal jurisdiction.

▇ However, Plaintiff's argument essentially would elevate a footnote over the substance of both the June 13, 2003 motion itself and the Court's June 17, 2003 Order. In both Defendant's motion and this Court's Order, the substance of the analysis was an attempt to clarify which of the two potential response dates was the correct date for Defendant's response. Indeed, neither the parties nor the Court addressed the merits of either complaint. Consequently, even though the motion made mention of striking the Complaint under Rule 12(f), the Defendant did not "deny the allegations of [the] complaint[.]" Therefore, Defendant did not waive its personal jurisdiction defense.

### B. Personal Jurisdiction

Letters of credit are widely used in international commercial transactions as a means of ensuring prompt payment for goods delivered. In the typical letter of credit transaction, the buyer of the goods has its bank issue a letter of credit naming the seller of the goods as beneficiary. This letter of credit is itself an irrevocable promise by the issuing bank to pay a sum certain to the seller at a certain time, in a certain place and through a certain currency.

For its part, the seller obtains the funds described in the letter of credit by presenting specified documents to a pre-ordained financial institution. If the documents presented by the seller match those documents identified in the letter of credit, then the seller is permitted to draw on the letter of credit. However, if the documents are not in order, the financial insti-

tution may refuse to honor the letter of credit.

Simpler letters of credit generally state that the seller of the goods may draw on the letter of credit at the issuing bank. Often in international transactions, however, parties may desire to have the letter of credit drawn upon a local bank so that the funds may more easily be obtained. In this more complex situation, a second bank is introduced to the transaction. The function of this second bank is usually two-fold: (1) it is to confirm that the papers presented by the seller are in compliance with the terms of the letter of credit and (2) it is to either honor the letter of credit and pay the funds or dishonor the letter of credit and return the documents to the seller. *See generally, Moog World Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382 (8th Cir. 1996) (citing Burton V. McCullough, *Letters of Credit* §§ 1.03–1.05 (1995); *see also Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 465 (2d Cir.1970)).[1]

In this case, the roles of the parties are easily identifiable. RZS is the seller on the underlying contract and the beneficiary of the letter of credit; PdVSA is the buyer on the underlying contract; Banesco is the issuing bank of the letter of credit; and Commerzbank is the confirming bank of the letter of credit. Furthermore, the letter of credit specified that it was payable for the benefit of RZS in the amount of $19,500,000.00 (U.S.Dollars) by the date of April 15, 2003, payable in the United Kingdom.

From these facts, and presented with this motion to dismiss for lack of personal jurisdiction over the defendant Commerzbank, the issue before the Court is as follows: whether the actions of Commerzbank, acting as confirming bank on a letter

**1.** The Eighth Circuit provides a cogent review not only of the letter of credit in general—from which this review was culled—but also its role in the broader development of commercial finance. *See Moog World Trade,* 90 F.3d at 1385.

of credit—issued on behalf of a Venezuelan concern, by a Venezuelan bank, payable in the United Kingdom, by a German bank for the benefit of a Virginia partnership—are sufficient to support the exercise of personal jurisdiction by this Court over Commerzbank, the German defendant.

In resolving the issue of personal jurisdiction, this Court applies a two part analysis: "(1) whether the particular facts and circumstances of the case fall within the Virginia long arm statute's reach; and (2) whether the exercise of personal jurisdiction in the matter is consistent with traditional notions of fair play and substantial justice, *i.e.*, the Due Process Clause of the United States Constitution." *Roche v. Worldwide Media, Inc.*, 90 F.Supp.2d 714, 716 (E.D.Va.2000) (footnote omitted). Because the Virginia long arm statute provides for the maximum jurisdictional scope permitted under the Constitution, "the district court's inquiry is often merged into the question of whether asserting jurisdiction violates the Due Process Clause." *Id.*[2]

In general, "[t]he Due Process Clause requires that no defendant be haled into court unless he has 'certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Id.* at 717 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Furthermore, the constitutional exercise of personal jurisdiction requires that the defendant purposefully direct its activities towards the forum state and that such activities give rise to the dispute at issue. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).[3]

Neither the Virginia state courts nor the Fourth Circuit have addressed the issue of defining personal jurisdiction over entities engaged in letter of credit transactions. Nevertheless, several federal circuit courts and other courts have addressed the issue and the consensus appears to be that the beneficiary's status as a resident of the forum state is not sufficient to establish personal jurisdiction over the banks involved in issuing or confirming the letter of credit for the benefit of the beneficiary. *See Moog World Trade Corp.*, 90 F.3d at 1386–87 (foreign bank issuing letter of credit payable at Missouri confirming bank for benefit of Missouri citizen was not subject to personal jurisdiction in Missouri); *Jet Charter Serv., Inc. v. W. Koeck Progress Aviation (U.S.A.), Inc.*, 907 F.2d 1110, 1114–15 (11th Cir.1990) (Swiss bank's failure to issue letter of credit in favor of Florida beneficiary for purchase of assets in Florida was not sufficient to establish personal jurisdiction in Florida under Fourteenth Amendment); *Pacific Reliant Indus. v. Amerika Samoa Bank*, 901 F.2d 735, 737 (9th Cir.1990) (defendant was "not subject to personal jurisdiction in Oregon simply because it issued a letter of credit in favor of an Oregon beneficiary"); *Chandler v. Barclays Bank, PLC*, 898 F.2d

2. Plaintiff alleges that specific personal jurisdiction is proper over this Defendant in this Court because Defendant transacted business within the Commonwealth of Virginia satisfying the Virginia "long-arm" statute. *See* Va. Code Ann. § 8.01–328.1(A)(1). Consequently, the "merged" analysis is appropriate in this case. *See English & Smith*, 901 F.2d at 38.

3. The formula stated here guides the analysis of the exercise of limited personal jurisdiction by this Court. While the Court recognizes that it may also assert general personal jurisdiction over some non-resident defendants, *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), nothing in the record before the Court in this case suggests that Commerzbank has the extensive contacts necessary to confer general personal jurisdiction over it in this forum.

1148, 1150–53 (6th Cir.1990) (Egyptian bank issuing letter of credit payable at confirming bank in New York for the benefit of Michigan beneficiary was not subject to personal jurisdiction in Michigan because of lack of minimum contacts); *Leney v. Plum Grove Bank,* 670 F.2d 878, 880–81 (10th Cir.1982) (letter of credit issued by Illinois bank on behalf of Illinois customer payable to California resident for purchase of Colorado property did not subject Illinois issuing bank to personal jurisdiction in Colorado); *Empire Abrasive Equip. Corp. v. H.H. Watson, Inc.,* 567 F.2d 554, 558 (3d Cir.1977) (Rhode Island bank's issuance of letter of credit for Rhode Island customer payable in Rhode Island did not subject issuing bank to jurisdiction of Pennsylvania where beneficiary resided); *Martin v. First Interstate Bank of Cal.,* 914 F.Supp. 473, 477–78 (D.N.M.1995) (jurisdiction over California issuing bank was not proper in New Mexico where beneficiary of letter of credit resided) (cited favorably in *DeSantis,* 949 F.Supp. at 424); *Occidental Fire & Cas. Co. of N.C. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 689 F.Supp. 564, 568 (E.D.N.C.1988) (North Carolina court could not constitutionally exercise jurisdiction over Illinois bank that issued letter of credit that benefitted North Carolina resident); *but see American Nat'l Bank & Trust Co. v. Int'l Seafoods of Alaska, Inc.,* 735 P.2d 747, 752–53 (Alaska 1987) (jurisdiction over Tennessee bank that confirmed letter of credit issued by Florida bank in favor of Alaska resident was constitutionally allowable in Alaska); *Van Schaack & Co. v. Dist. Ct., Eighteenth Judicial District,* 189 Colo. 145, 538 P.2d 425, 426 (1975) (Kansas issuing bank subject to personal jurisdiction in Colorado when it issued letter of credit on behalf of its Kansas client for the benefit of a Colorado resident purchasing property in Colorado).

The majority of courts that have addressed the issue have found that jurisdiction does not arise from the issuance of letters of credit, because the letter of credit is not a contract between the beneficiary and the issuing bank. *See Moog World Trade,* 90 F.3d at 1385. Instead, the contract is one between the issuing bank and the buyer, unrelated to and independent from the underlying contract between the buyer and the seller. *See id.* Likewise, it stands to reason that the confirming bank, which also has no contractual relationship with the beneficiary, is similarly insulated from the underlying contract. Moreover, these courts often suggest that if the beneficiary is concerned with subjecting the issuing or confirming bank to a certain forum, it can require that the letter of credit be drawn and confirmed at a financial institution in that forum. *See id.* at 1386–87; *Empire Abrasive Equip.,* 567 F.2d at 558; *Chandler,* 898 F.2d at 1153.

In general, these courts go on to conclude:

> We do not think that by issuing a letter of credit for a[n out of state] customer, calling for its performance in [another jurisdiction], the bank can be said to have subjected itself to the adjudicatory authority of [the forum state] with respect to its obligations under the letter of credit solely because the beneficiary was a [forum state] resident. We agree ... that subjecting the bank to the jurisdiction of [the forum state] would offend traditional notions of fair play and substantial justice.

*Empire Abrasive Equip.,* 567 F.2d at 558.

The contrary position, taken by the state supreme courts of Alaska and Colorado, rests on the proposition that when issuing or confirming a letter of credit, the issuing or confirming bank is almost always aware of the beneficiary's location and the purpose of the funds. *See Van Schaack,* 538

P.2d at 426; *American Nat'l Bank & Trust,* 735 P.2d at 752–53. Consequently, these courts conclude that because the banks are aware that the final impact of their decisions to issue or honor letters of credit will be felt in the state in which the beneficiary resides, that those banks therefore purposely avail themselves of the laws and privileges of the beneficiary's state. *See id.*

■ Upon review of these two lines of cases, this Court is persuaded to follow the majority approach. Indeed, this Court finds that the reasoning of the majority approach is more sound and more in keeping with the principles behind the minimum contacts test as set forth by the Supreme Court. Specifically, this Court finds that a foreign bank, which agrees to confirm a letter of credit issued by another foreign bank in a foreign nation for the benefit of a resident of Virginia does not purposefully avail itself of the laws, privileges and protections of the Commonwealth of Virginia.

Despite the fact that Defendant contacted Plaintiff in Virginia with regard to the letter of credit, the Court is left unconvinced that this contact—phone calls and fax transmissions—comprised an effort by Defendant to avail itself of the privilege of conducting business in Virginia. *Village Lane Rentals, LLC v. Capital Fin. Group,* 159 F.Supp.2d 910, 915 (W.D.Va.2001) ("In fact, it has generally been held that, 'mere phone calls and letters, and arguably fax communications, in furtherance of a transaction, are insufficient to form a basis for personal jurisdiction' ") (quoting *Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.,* 774 F.Supp. 393, 397–98 (E.D.Va.1991)). Moreover, this contact was not of a solicitous nature. Rather, Commerzbank's contact with RZS in Virginia occurred because Commerzbank was attempting to complete a contract it had made with Banesco for the performance of a service—the honor or dishonor of a letter of credit—that was to occur, and did in fact occur, in the United Kingdom.

■ Viewed in the whole, Commerzbank's phone calls and faxes to Virginia are incidental to the claims that give rise to this dispute and do not evidence an intent to seek shelter in the laws, privileges and protections of the Commonwealth of Virginia. Therefore, this Court finds that it lacks personal jurisdiction over the defendant Commerzbank. Consequently, because the Court grants Defendant's motion on that ground, it does not reach the question of whether the matter should be dismissed on the ground of *forum non conveniens.*

## IV. Conclusion

For the foregoing reasons, this Court finds that it does not have personal jurisdiction over Defendant. Therefore, the Court will GRANT the Defendant's Motion to Dismiss. An appropriate Order will issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1) the Defendant's Motion to Dismiss is GRANTED on the ground of lack of jurisdiction;

2) the Clerk of the Court shall forward copies of this Order and the accompanying Memorandum Opinion to all counsel of record.