**RZS HOLDINGS AVV Plaintiff**

v.

**PDVSA PETROLEOS S.A., Citgo Petroleum Corporation and Banesco Banco Universal Defendants.**

No. CIV. A. 03–1268–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 2, 2003.

George Rubert Doumar, George R.A. Doumar PLLC, Arlington, VA, for Plaintiff.

Maureen Byrne Beahn, Shaw Pittman, McLean, Quentin Reckie Corrie, Birch Stewart Kolasch & Birch LLP, Falls Church, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue at the threshold of this diversity fraud, conspiracy, and tort action growing out of a contract for the sale of six tankers of gasoline is whether plaintiff, the supplier of the gasoline, has established a *prima facie* case for personal jurisdiction over the Venezuelan bank that issued a letter of credit for the transaction.

## I.

Plaintiff RZS is a Virginia sole proprietorship with its principal office in Oakton, Virginia and mailing offices in London and Venezuela. Defendant PDVSA is the state oil company of Venezuela with its principal place of business in Caracas, Venezuela. Defendant Banesco is a private bank and Venezuelan corporation with its principal place of business in Caracas, Venezuela. Defendant CITGO Petroleum is a United States based oil refining company organized under the laws of Delaware with its principal place of business in Tulsa, Oklahoma. It is a wholly owned subsidiary of Petroleos de Venezuela, S.A., which is also the parent of PDVSA. Thus, CITGO is a sibling corporation of PDVSA.

Plaintiff alleges that it entered into a written contract with PDVSA on February 19, 2003 for the sale and purchase of 417,500 barrels of gasoline, an amount of gasoline that apparently fills approximately six tanker ships. Beginning in December 2003, when a crippling Venezuelan national oil strike led to the shut down of Venezuelan oil refineries and a drastic decrease in the supply of oil and gasoline in Venezuela, PDVSA entered into a series of contracts, like this one, with various foreign companies for the importation of gasoline. Pursuant to the terms of RZS's contract, plaintiff agreed to deliver six tankers of gasoline at the port at Amuay, Venezuela, and PDVSA agreed to establish an irrevocable letter of credit for the benefit of RZS in the amount of $19.5 million. PDVSA, it is alleged, entered into a contract with Banesco to issue the letter of credit, which it did on March 28, 2003. On March 5, 2003, RZS was notified by fax that Commerzbank, AG, a German bank, would act as the confirming bank on the letter of credit.[1] Commerzbank is not a defendant in this action.

By mid-March 2003, the Venezuelan national strike ended and PDVSA's gasoline supply shortage was resolved. Plaintiff alleges that as a result, PDVSA desired to avoid performing on the RZS contract. To this end, plaintiff alleges that PDVSA met with CITGO executives who agreed to assist PDVSA in reneging on the contract by asking RZS to release PDVSA from its obligations and subsequently threatening RZS on several occasions. Furthermore, PDVSA sought three amendments to the letter of credit between March 13, 2003 and April 4, 2003, all allegedly designed to block consummation of the transaction.

Plaintiff contends that despite PDVSA's efforts to avoid performing on the contract, a tanker arrived at Amuay on April 14, 2003 ready to discharge the first shipment of gasoline. Prior to this, on April 10, 2003, plaintiff submitted the necessary documents to Commerzbank to draw on the letter of credit. Commerzbank identified several discrepancies in the submitted documents, which plaintiff contends were immediately corrected and the corrected documents then resubmitted. Plaintiff alleges that Commerzbank nonetheless

---

**1.** Letters of credit are often used in international commercial transactions to guarantee prompt payment for goods. Typically, the buyer enters into a contract with a bank to issue a letter of credit for the benefit of the seller. The letter of credit is an irrevocable promise by the issuing bank to pay an agreed sum. Once the goods are delivered, the seller may obtain the funds from the issuing bank by presenting certain specified documents to the issuing bank, typically, the seller's invoice and shipping documents. Often in international transactions, the issuing bank enters into a contract with a local advising or confirming bank so that the seller may obtain funds locally and in its own currency. *See RZS Holdings, AVV v. Commerzbank, AG,* 279 F.Supp.2d 716, 719 (E.D.Va.2003); *see also Moog World Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382, 1385 (8th Cir.1996); *Burton V.*

again asserted that certain discrepancies had not been resolved and refused to honor the letter of credit. Plaintiff's tanker remained at Amuay until April 25, 2003 at which time it returned to its European point of origin without discharging any gasoline. Since that time, plaintiff has been unable to draw on the letter of credit

The first shot fired in the ensuing dispute was a complaint filed by plaintiff on May 30, 2003 in this district against Commerzbank alleging that Commerzbank's refusal to honor the letter of credit constituted a breach of contract. This complaint was dismissed for lack of personal jurisdiction. *See RZS Holdings, AVV v. Commerzbank, AG,* 279 F.Supp.2d 716, 722 (E.D.Va.2003). The next day, plaintiff filed this action in the Circuit Court for the County of Fairfax, Virginia alleging three counts: (1) fraud by defendant PDVSA; (2) conspiracy by defendants PDVSA, CITGO, and Banesco; and (3) tortious interference with contract by defendants CITGO and Banesco.[2] Soon thereafter, the action was properly removed to this district. A subsequent motion to remand was denied. *See RZS Holdings, AVV v. PDVSA Petroleos S.A. et al.,* Civil Action No. 03–1268–A (E.D.Va. November 3, 2003) (Order). Defendant Banesco now brings a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P. For the reasons that follow, this motion must be granted.

## II.

 Banesco contends that its alleged contacts with the Commonwealth of Virginia—the sending of four fax communications to RZS in Virginia, the posting of a Spanish-language website marketing a Visa card to Venezuelan residents, and the existence of CITGO service stations in Virginia from which Banesco indirectly derives revenues—are not sufficient to establish personal jurisdiction under either the Virginia long-arm statute, Va.Code § 8.01–328.1, or constitutional due process requirements. RZS counters that such contacts authorize personal jurisdiction. When a defendant challenges a court's exercise of personal jurisdiction, the plaintiff must "prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). To survive such a challenge, the plaintiff must make a *prima facie* showing of a sufficient jurisdictional basis, while the court must "construe all relevant allegations in the light most favorable to the plaintiff and draw the most favorable inferences for the existence of jurisdiction." *America Online, Inc. v. Chih–Hsien Huang, et al.,* 106 F.Supp.2d 848, 853 (E.D.Va.2000) (citing *Combs,* 886 F.2d at 676).

It is well-settled that a resolution of a personal jurisdiction challenge by a nonresident defendant requires a two-step inquiry. First, a court must assess whether the defendant is subject to jurisdiction under the Virginia long-arm statute given the nature of the cause of action and defendant's contacts with the Commonwealth. Second, a court must determine whether personal jurisdiction comports with due process—that is, whether the exercise of jurisdiction under the long-arm statute exceeds its constitutional grasp. *See Ellicott Machine Corp., Inc. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993); *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990); *Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.,* 20 F.Supp.2d 948, 951 (E.D.Va.1998). This two-step jurisdictional analysis, applied

---

McCullough, Letters of Credit §§ 1.03–1.04 (1995).

**2.** Absent from this litany of claims is a breach of contract claim against PDVSA, apparently because this claim is contractually subject to arbitration.

here, compels the conclusion that neither the requirements of Virginia's long-arm statute nor constitutional due process are met with respect to the assertion of personal jurisdiction over Banesco.[3]

## A. The Long–Arm Statute

RZS asserts that personal jurisdiction is appropriate under two provisions of the Virginia long-arm statute: (1) Virginia Code § 8.01–328.1(A)(1), which permits the exercise of personal jurisdiction in Virginia over entities "transacting any business in this Commonwealth" and (2) Virginia Code § 8.01–328.1(A)(4), which permits the exercise of personal jurisdiction in Virginia over entities "causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if [the defendant] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth."

▇▇▇ Banesco's alleged contacts with Virginia are not sufficient to conclude that it "transact[s] business" in Virginia and is thus subject to personal jurisdiction under § 8.01–328.1(A)(1). To begin with, it is undisputed that Banesco has no facilities or presence in Virginia. It maintains no offices in Virginia, nor indeed anywhere in the United States. It does not employ individuals in Virginia, own any assets here, or provide banking services to clients in Virginia. For its contention that Banesco "transacted business" in Virginia, RZS can point only to four fax communications to RZS.[4] Yet, these faxes will not suffice for it is clear that "mere phone calls and letters, and arguably fax communications, in furtherance of a transaction are insufficient to form a basis for personal jurisdiction." *Superfos Investments Ltd. v. First-Miss Fertilizer, Inc.,* 774 F.Supp. 393, 397–98 (E.D.Va.1991); *see also Processing Research, Inc. v. Larson,* 686 F.Supp. 119, 122 (E.D.Va.1988) (citing *Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391, 396 (E.D.Va.1984)). Nor is it enough to show that Banesco maintains a website offering a Visa card to Venezuelan residents that may be accessed in Virginia.[5] Where, as here, Banesco's website advertised its Visa card only to Venezuelan residents, there is no basis for jurisdiction. A website provides a basis for jurisdiction only if, as has not been shown here, the website's creator "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that

---

**3.** Because the Virginia Supreme Court has held that the purpose of the long-arm statute is to extend personal jurisdiction "to the extent permissible under the due process clause," many courts collapse this traditional two-part analysis into a single inquiry into whether jurisdiction would comport with due process. *See Herbert v. Direct Wire and Cable, Inc.,* 694 F.Supp. 192, 194 (E.D.Va.1988) (citing *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 740, 180 S.E.2d 664 (1971)). Nonetheless, it is possible that a defendant's contacts could meet the requirements of due process, yet escape the literal grasp of the long-arm statute. *See DeSantis v. Hafner Creations,* 949 F.Supp. 419, 423 (E.D.Va.1996). Thus, it is appropriate here to proceed with the two-part analysis.

**4.** Banesco points out that the fax messages RZS relies on were never sent to RZS in Virginia, but only to Commerzbank's office in London. Although Banesco may well be correct in this regard, the analysis proceeds on the assumption that RZS's allegation is correct. *See America Online, Inc.,* 106 F.Supp.2d at 853 (stating that on defendant's motion to dismiss for lack of personal jurisdiction, a court must "construe all relevant allegations in the light most favorable to the plaintiff" (citing *Combs,* 886 F.2d at 676)).

**5.** *See* http://www.banesco.com.

activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002); *see also Rannoch, Inc. v. The Rannoch Corp.*, 52 F.Supp.2d 681, 685 (E.D.Va.1999).

█ Plaintiff's principal argument to the contrary is that one of the faxes sent to RZS in Virginia or the posting of the website is sufficient to provide a basis for personal jurisdiction because Virginia's long-arm statute is a "single act" statute. This is a misunderstanding of the character of the Virginia long-arm statute. While a single act can furnish the basis for personal jurisdiction under the statute, that act must be more substantial than the faxes or website here at issue. To conclude otherwise "would convert the long-arm statute from a 'single' statute to a 'single act of any kind or nature whatsoever' statute, a result neither intended by the General Assembly, nor permitted by the statutory language." *Processing Research, Inc. v. Larson*, 686 F.Supp. 119, 122 (E.D.Va.1988); *see also Affinity Memory & Micro*, 20 F.Supp.2d at 952.

█ Plaintiff's jurisdictional argument does not rest solely on the transacting business provision of the long-arm statute. Also relied on in this regard is Virginia Code § 8.01–328.1(A)(4) which provides for personal jurisdiction where the defendant has caused tortious injury in Virginia by an act or omission outside Virginia provided that plaintiff can show that defendant (i) "regularly does or solicits business" in Virginia, (ii) "engages in any other persistent course of conduct" in Virginia, or (iii) "derives substantial revenue from goods used or consumed or services rendered" in Virginia. Va.Code § 8.01–328.1(A)(4); *see*

*also Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985); *DeSantis*, 949 F.Supp. at 426 (finding no basis for jurisdiction under § 8.01–328.1(A)(4) because plaintiff "has not established a relationship between [defendant] and Virginia in any of the three ways specified..."). Assuming without deciding that plaintiff can establish that the defendant caused tortious injury in Virginia, it is pellucidly clear that plaintiff cannot establish the additional statutory requirements. Plaintiff's contention that Banesco earns substantial revenue indirectly through payments it receives from CITGO, which operates service stations in Virginia, is meritless.

In sum, therefore, plaintiff has not shown that the grasp of Virginia's long-arm statute reaches Banesco in this case. While this is sufficient to end the analysis,[6] it is nonetheless useful to address whether due process would be violated were the statute construed to reach Banesco in this case.

## B. Due Process

To determine whether a court's exercise of personal jurisdiction comports with due process, it is necessary to assess "whether the defendant purposefully established 'minimum contacts' in the forum state," *Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *English & Smith*,

---

**6.** *See DeSantis*, 949 F.Supp. at 423 ("Virginia's long-arm statute provides a ceiling of procedural protections above the federal floor of constitutional due process."); *see also United States v. Hammad*, 858 F.2d 834, 839 (2d Cir.1988) (same).

901 F.2d at 39. Thus, the plaintiff must show that the defendant "purposely directed his activities at residents of the forum," and that the plaintiff's claim arises out of the defendant's forum-related activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *America Online, Inc.,* 106 F.Supp.2d at 855. This test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)); *America Online, Inc.* 106 F.Supp.2d at 856. That is, the defendant's contacts in Virginia must be such that "he should reasonably anticipate being haled into court there." *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1979); *Blue Ridge Bank,* 755 F.2d at 374.

 These principles compel the conclusion that Banesco's contacts with Virginia are insufficient under the due process clause.[7] Just as the four fax transmissions to plaintiff in Virginia and the posting of a website directed to Venezuelans are inadequate to meet the requirements of the "transacting business" provision of the long-arm statute, they are inadequate to show that Banesco purposefully directed its activities to Virginia.[8] These contacts do not show, as due process requires, that Banesco has "purposely availed [itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 235, 78 S.Ct. 1228. Furthermore, plaintiff's claims arise out of its contract with defendant PDVSA and PDVSA's arrangement with Banesco and Commerzbank regarding the letter of credit, and not out of defendant's forum-related activities.

7. It is worth noting that caselaw in this district and other circuits holds that in letter of credit transactions, the "beneficiary's status as a resident of the forum state is not sufficient to establish personal jurisdiction over the banks involved in issuing or confirming the letter of credit...." *RZS Holdings, AVV,* 279 F.Supp.2d at 720; *see also Moog World Trade Corp.,* 90 F.3d at 1386 (foreign bank issuing letter of credit not subject to personal jurisdiction in state where beneficiary resides); *Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1113–15 (11th Cir.1990) (same); *Pacific Reliant Indus. v. Amerika Samoa Bank,* 901 F.2d 735, 737 (9th Cir.1990) (same); *Chandler v. Barclays Bank, PLC,* 898 F.2d 1148, 1151 (6th Cir.1990) (same); *Empire Abrasive Equip. Corp. v. H.H. Watson Inc.,* 567 F.2d 554, 558 (3d Cir.1977). The reasoning of these cases is that the issuing bank cannot be said to have "subjected itself to the adjudicative authority of the [beneficiary's state of residence]," and thus cannot be found to have purposely directed its activities to that state. *Empire Abrasive,* 567 F.2d at 558; *cf. RZS Holdings, AVV,* 279 F.Supp.2d at 722. Nor is it reasonable for the bank to expect that it would be haled into court in the beneficiary's state of residence. *See Jet Charter Serv., Inc.,* 907 F.2d at 1114.

8. *See ALS Scan Inc.,* 293 F.3d at 714 (finding that a defendant does not purposely direct its Internet activities into the State unless it "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State..."); *America Online, Inc.,* 106 F.Supp.2d at 856–57 (finding that defendant did not purposely direct its activities to Virginia simply because it entered into a contract with a Virginia resident); *Rannoch, Inc.,* 52 F.Supp.2d at 685 (finding that "the placement of the website on the Internet with knowledge of the possibility that the site might be accessed in Virginia," was not sufficient to "satisfy the due process jurisdictional standard"); *Processing Research, Inc.,* 686 F.Supp. at 123 (finding that defendant did not purposely direct his activities to the forum merely because it advertised in a periodical that might be published or read in the forum).

Finally, given the nature of defendant's contacts in Virginia, it is not reasonable to conclude that defendant should have anticipated being sued in Virginia.[9] *See World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559; *Blue Ridge Bank*, 755 F.2d at 374.

Based on the foregoing, Banesco's contacts with the Commonwealth of Virginia do not fall within the grasp of Virginia's long-arm statute. *See* Va.Code § 8.01–328.1. Moreover, even if they did, Banesco's contacts are insufficient under the due process clause. Accordingly, Banesco's motion to dismiss for lack of personal jurisdiction must be denied.

An appropriate order has issued.

---

**9.** Even in the absence of a constitutional basis for "specific jurisdiction," a Virginia court may nevertheless assert "general jurisdiction" over a defendant whose activities in Virginia are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Yet, the "threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction," *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir.1997) (citing 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067, at 295–98 (1998)), and Banesco's alleged contacts do not meet this higher standard.