# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 18-2352

———————————————

Maria C. Childress, An Individual, on behalf of Herself and Others Similarly Situated, also known as Tina Childress; Association of Late Deafened Adults, (ALDA), an Illinois Corporation

*Plaintiffs - Appellees*

Mary Stodden, An Individual, on behalf of Herself and Others Similarly Situated

*Petitioner - Appellee*

Hearing Loss Association of America, Greater St. Louis Chapter, (HLAA-StL), an unincorporated affiliate of the Hearing Loss of America, A Maryland Corporation

*Plaintiff - Appellee*

v.

Fox Associates, LLC, doing business as Fabulous Fox Theatre

*Defendant - Appellant*

———————————————

No. 18-2577

———————————————

Maria C. Childress, An Individual, on behalf of Herself and Others Similarly Situated, also known as Tina Childress; Association of Late Deafened Adults, (ALDA), an Illinois Corporation

*Plaintiffs - Appellees*

Mary Stodden, Individual, on behalf of Herself and Others Similarly Situated

*Petitioner - Appellee*

Hearing Loss Association of America, Greater St. Louis Chapter, (HLAA-StL), an unincorporated affiliate of the Hearing Loss of America, A Maryland Corporation

*Plaintiff - Appellee*

v.

Fox Associates, LLC, doing business as Fabulous Fox Theatre

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 17, 2019
Filed: August 7, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Fox Associates, LLC, doing business as the Fabulous Fox Theater, appeals the district court's[1] adverse grant of summary judgment and award of attorney's fees, expenses, and costs on an Americans with Disabilities Act claim brought by Maria

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Childress and Mary Stodden, two individuals with hearing impairments, as well as two organizations that serve individuals with hearing impairments. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Fox Associates runs the Fabulous Fox Theater (the Fox), a 4,500-seat live theater in St. Louis, Missouri. The Fox does not develop or produce its own shows; rather, it provides a venue for traveling Broadway shows to perform. These traveling shows do not rehearse at the Fox for any length of time before performing. They simply arrive at the venue, set up their sets and equipment pursuant to their needs, and conduct multiple performances of the same production.

In April 2016, Maria Childress, a late-deafened adult, contacted the Fox and requested captioning for a performance of the musical *Rent*, scheduled for May 2017. Childress, while fluent in American Sign Language (ASL), prefers captioned shows to ASL-interpreted shows so that she can experience the writers' original dialogue and lyrics rather than an ASL interpreter's version. The Fox told Childress that it did not offer captioning and had no plans to do so in the future, but that Childress was welcome to attend a scheduled ASL-interpreted performance of the show.

Childress and the Association of Late-Deafened Adults (ALDA) filed suit against Fox Associates under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182, in June 2016.[2] She sought injunctive and declaratory relief, including mandated captions at all performances for which the Fox received a captioning request two weeks in advance, publicity that captions were available along with a way to request them, and sale of tickets to deaf and hard-of-hearing patrons by

_____

[2]Plaintiffs Mary Stodden and the Hearing Loss Association of America (HLAA) joined the lawsuit in July 2017.

non-telephonic means. After Childress sued, the Fox offered to amend its policies and to offer a single prescheduled captioned performance of each Broadway production as long as a theater patron requested captions for a performance of that production two weeks in advance. To that end, the Fox provided a single scheduled captioned performance—a Saturday matinee—for each of six separate productions from May 2017 to January 2018. The Fox also began publicizing the availability of these performances and provided a means to request captioning and purchase tickets through its website.

Childress was unable to attend the prescheduled captioned performance of *School of Rock* in January 2018, so the Fox provided a second captioned performance a week earlier. It notified Childress, however, that this second captioned performance was an exception to its policy and that future requests for additional captioned performances would not always be granted.[3] When Michele Westmaas, a season ticketholder and member of ALDA, requested that the Fox provide captioning at the remaining 2018 performance for which she had tickets, the Fox instead exchanged her tickets for tickets to the prescheduled captioned performance.

While Childress's initial request asked the Fox to provide open captioning, the Fox chose to provide closed captioning.[4] It therefore purchased six electronic tablets that allow theater patrons to view captions during a performance. The tablets can be used from any seat in the theater. The Fox also offers device holders for these tablets so that patrons can view captions hands-free, but these holders can only be affixed to

---

[3]This hedging by the Fox blunts the force of the dissent's contention that, since the original compromise was reached, the Fox has not denied the plaintiffs captioning at any requested performance.

[4]Closed captioning is generally provided on handheld devices and is visible only to the patron who requests the captioning, while open captioning is projected on a surface that is visible to an entire theater or section of the theater.

wheelchair-accessible seating due to fire hazards. Captions are generated and appear in real time so as to exactly duplicate what occurs onstage, including dialogue, song lyrics, and sound effects. Because every live performance is slightly different, a live, in-person court reporter must be present to transcribe captions for each performance.

Following the Fox's implementation of its single-captioned-performance policy, both parties moved for summary judgment. The plaintiffs argued that, because the ADA requires equal service, the Fox was required to offer captioning when requested, subject only to the ADA's "undue burden" affirmative defense. Because Fox Associates refused to provide financial information during discovery, stating that such information was irrelevant, and because the undue burden defense requires consideration of a defendant's financial state, the plaintiffs contended that Fox Associates had waived the defense. Fox Associates argued that requiring captioning whenever it was requested was not a reasonable modification to the Fox's policies, practices, and procedures and that, because it provided captioning whenever the plaintiffs requested it, their claim for injunctive relief was moot. It further argued that it was not yet raising an undue burden argument and that this fact, alone, prevented a grant of summary judgment against it.

The district court found that the plaintiffs brought suit under the ADA's auxiliary aids and services requirements, see 42 U.S.C. § 12182(b)(2)(A)(iii), rather than the less-specific section addressing modification to "policies, practices, and procedures," see 42 U.S.C. § 12182(b)(2)(A)(ii). It further found that failing to offer captioning at any performance where captions were requested "results in deaf persons being excluded, denied services, or otherwise treated differently than other individuals merely because of the absence of [an auxiliary] aid. This failure violates 42 U.S.C. § 12182(b)(2)(A)(iii)." Childress v. Fox Assocs., LLC, No. 4:16 CV 931 CDP, 2018 WL 1858157, at *4 (E.D. Mo. Apr. 18, 2018). Fox Associates presented no argument regarding the undue burden defense and the district court granted summary judgment for the plaintiffs. It awarded them injunctive relief and, as

relevant to this appeal, required the Fox to provide captioning whenever it received a request two weeks in advance.

Following the grant of summary judgment in their favor, the plaintiffs moved for an award of attorney's fees, expenses, and costs under 42 U.S.C. § 12205. The district court granted the motion and calculated reasonable attorney's fees based on the lodestar method. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). It reduced the requested amount of attorney's fees, however, based on its findings that the plaintiffs' attorney billed for clerical or secretarial work and expended time on matters irrelevant to the case as filed. The district court therefore granted the plaintiffs $97,920 in attorney's fees rather than their requested $100,845.

Fox Associates now appeals, arguing that it provides deaf and hard-of-hearing individuals with meaningful access to its benefits and it should be allowed flexibility to consolidate multiple captioning requests into one performance because providing captions is expensive. Fox Associates further challenges the award of attorney's fees, arguing that the district court used an inflated hourly rate to calculate those fees, allowed the plaintiffs' counsel to bill for tasks he should not have included, and failed to reduce the fee award to account for the plaintiffs' partial success on their summary judgment motion.

II.

Fox Associates first argues that the district court improperly granted summary judgment for Appellees and failed to grant Fox Associates' summary judgment motion on Appellees' ADA claim. "We review a district court's decision on cross-motions for summary judgment de novo." Thirty & 141, L.P. v. Lowe's Home Ctrs., Inc., 565 F.3d 443, 445-46 (8th Cir. 2009).

Under the ADA, a public accommodation[5] must provide auxiliary aids and services to individuals with disabilities if such individuals need those aids and services to enjoy "meaningful access" to the public accommodation. Argenyi v. Creighton Univ., 703 F.3d 441, 449 (8th Cir. 2013). A person with a disability receives meaningful access if she receives an "equal opportunity to gain the same benefit" as a person without her disability. Id. Whether an entity provides meaningful access is a fact-based inquiry; a public accommodation's exact responsibilities under the ADA must be determined on a case-by-case basis. Id.

The exact form of auxiliary aid necessary is left up to the public accommodation, but, once the public accommodation determines that an aid is needed, it must provide that aid unless doing so would be an undue burden or would fundamentally alter the nature of the provided benefit. 42 U.S.C. § 12182(b)(2)(A)(iii). Both the undue burden and the fundamental alteration arguments are affirmative defenses provided by the ADA. Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (citing 28 C.F.R. § 35.150(a)(3)). Failure to raise an affirmative defense before the district court constitutes waiver of that defense. Warner Bros. Entm't, Inc. v. X One X Prods., 840 F.3d 971, 980 (8th Cir. 2016).

On appeal, Fox Associates argues that deaf and hard-of-hearing individuals receive meaningful access to the Fox's productions because the Fox currently captions one performance of each Broadway production and has never denied a captioning request. Appellees counter that deaf and hard-of-hearing individuals are guaranteed only one performance date while individuals without hearing impairments may choose from a broad range of performance dates. This discrepancy, Appellees argue, indicates that individuals with hearing impairments have less opportunity to

---

[5]Fox Associates does not dispute that the Fox is a public accommodation and is subject to the ADA's requirements.

receive the benefits the Fox provides, and that, therefore, the Fox denies them meaningful access.

The Fox provides its scheduled captioned performance during a Saturday matinee time slot for each Broadway production. Under the Fox's current policies, individuals with hearing impairments must attend that production in order to have access to captioning and therefore cannot, like their hearing-enabled counterparts, attend the theater during the week or in the evening. This excludes individuals with hearing impairments from "the economic and social mainstream of American life[,]" perpetuating the discrimination the ADA sought to address. McGann v. Cinemark USA, Inc., 873 F.3d 218, 230 (8th Cir. 2017) (quoting PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001)).

We note, too, that the Fox implemented Childress's request for a second captioned performance of *School of Rock* only after explicitly stating that it did so as an exception to its policy and that it would not always grant similar requests in the future.[6] We therefore find that the Fox's one-captioned-performance policy denies persons with hearing impairments an equal opportunity to gain the same benefit as persons without hearing impairments, and that deaf and hard-of-hearing individuals therefore do not have meaningful access to the benefits the Fox provides.

Despite its failure to provide meaningful access to individuals with hearing impairments, Fox Associates could still prevail if it could show that providing captioning at all requested performances would be an undue burden.[7] However, in

---

[6]See Footnote 3.

[7]Fox Associates could also prevail if it could show implementing this request-based captioning system would fundamentally alter the nature of the benefit it provides. However, Fox Associates conceded in the district court that captioning is not a fundamental alteration, see Def.'s Resps. & Objections 3, Dist. Ct. Dkt. 34-2, and it presents no argument on this point on appeal.

response to Appellees' motion for summary judgment, Fox Associates explicitly stated that it was "not asserting the affirmative defense[] of 'undue burden' . . . ." Def.'s Mem. Opp'n Pls.' Mot. Summ. J. 7, Dist. Ct. Dkt. 50. Having failed to do so in the district court, it cannot do so now. See Warner Bros., 840 F.3d at 980; Modern Leasing, Inc. of Iowa v. Falcon Mfg. of Cal., Inc., 888 F.2d 59, 62-63 (8th Cir. 1989).

Fox Associates' conclusion that Appellees were "not entitled to summary judgment on any non-asserted affirmative defenses[,]" " Def.'s Mem. Opp'n Pls.' Mot. Summ. J. 7, and its argument on appeal that the district court erred in failing to account for a potential undue burden ignore the fact that it was Fox Associates' responsibility to assert the undue burden defense. A party who does not assert a defense in the district court cannot assert that defense on appeal, and Fox Associates has therefore waived that defense.

Finding that the Fox does not provide meaningful access to individuals with hearing impairments and that Appellees' claim is not subject to the undue burden defense, we conclude that the district court properly granted summary judgment in favor of Appellees on their ADA claim. We note, however, that if the volume of captioning requests in the future rises to the level of an undue burden on the Fox, nothing precludes Fox Associates from bringing its own lawsuit and seeking to modify the district court's order in this case.

### III.

Having determined that the district court properly granted summary judgment in favor of Appellees, we must now determine whether the district court properly awarded Appellees over $97,000 in attorney's fees. "Attorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse of discretion." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005).

Federal courts employ the lodestar method, which multiplies the number of hours worked by the prevailing hourly rate, when calculating reasonable attorney's fees. Perdue v. Kenny A. ex rel Winn, 559 U.S. 542, 546 (2010). A district court has "great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar[,]" Banks v. Slay, 875 F.3d 876, 882 (8th Cir. 2017) (internal quotation marks omitted), and it may rely on reconstructed time entries to calculate the hours worked if those entries "satisfactorily document [the] time[.]" MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1061 (8th Cir. 1988). A district court should exclude "hours that were not 'reasonably expended'" from its calculations, Hensley, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, at 6 (1976)), and may reduce a fee award if a plaintiff does not obtain all the relief she sought. See id. at 435-36 (finding that courts can reduce a fee award to account for unsuccessful claims).

Fox Associates argues on appeal that the district court committed three errors in calculating its award of attorney's fees. First, Fox Associates argues that it implemented all the remedies Appellees sought before the district court ruled in their favor, including offering captioned performances, publicizing those performances and providing a way to request captioning, providing handheld captioning devices, and allowing deaf and hard-of-hearing individuals to obtain tickets through non-telephonic means. Fox Associates contends, therefore, that Appellees' counsel should only be compensated up until the date the Fox implemented those remedies. However, as Appellees correctly point out in their brief, the parties continued to fight over how many captioned performances the Fox needed to provide, nothing prevented the Fox from reverting to its previous policies, and ultimately the district court awarded nearly all the relief Appellees requested in their Amended Complaint.[8] "[I]n

---

[8]Appellees additionally requested that the Fox be required to solicit and respond to customer feedback on its captioning. The district court did not grant this request. However, the Fox does not argue on appeal that the district court erred in failing to reduce the attorney's fees award based on Appellees' failure to obtain this remedy.

light of the substantial relief [Appellees] obtained," see id. at 436, we conclude that the district court did not abuse its discretion in failing to reduce its award of attorney's fees based on partial litigation success.

Second, Fox Associates argues that Appellees' requested hourly rate—$450—is unreasonable because it exceeds prevailing market rates and because Appellees' counsel does not charge his clients that much. We note first that Appellees' counsel does not charge his clients $450 an hour because he does not charge a set fee at all. Rather, he relies on the jurisdictions in which he practices to determine a fair market rate. Fox Associates does not address the fact that Appellees' counsel has over 30 years of practice experience, including 10 years of experience solely in ADA litigation involving individuals with hearing impairments. Nor does Fox Associates present any evidence that $450 is above the prevailing market rate for such an attorney in the St. Louis area. In fact, Fox Associates presents no evidence as to prevailing market rates in the St. Louis area other than the rates for its own attorneys. Because a district court is presumed to be familiar with the market rates in its jurisdiction, see Banks, 875 F.3d at 882, and because Fox Associates has failed to present evidence that the market rate the district court chose is unreasonable, we find that the district court did not abuse its discretion in setting an hourly rate of $450.

Third and finally, Fox Associates argues that the district court should have reduced its fee award because Appellees' counsel impermissibly reconstructed time entries after the fact, billed an excessive number of hours, and impermissibly billed non-attorney work at the attorney rate. However, reconstructed time entries do not necessarily require a fee reduction, see MacDissi, 856 F.2d at 1061, and the district court determined that the reconstructed entries, which dealt only with brief communications, satisfactorily documented the time. We agree. The district court conducted a thorough review of the time entries in this case and concluded that 5.7 hours of work were not compensable as either non-attorney work or unreasonably-

-11-

expended hours. Fox Associates provides no evidence that the district court abused its discretion in failing to exclude more hours; indeed, Fox Associates does not even indicate how many hours it believes were excessive. Without more, we cannot say the district court abused its discretion in failing to reduce its fee award further for inefficiency, and we uphold the district court's award of attorney's fees.

IV.

We affirm the district court's judgment in full.

GRASZ, Circuit Judge, dissenting.

There is an old adage that "bad facts make bad law." *Colbruno v. Kessler*, __ F.3d __, 2019 WL 2751434, at *7 (10th Cir. July 2, 2019) (Tymkovich, C.J., dissenting). Likewise, a litigation strategy can result in bad law leading to unforeseen consequences. I fear that may be the case here. For whatever reason, the Fox addressed only the question of meaningful access and failed to assert an undue burden defense at the summary judgment stage, even though the Fox says the cost of providing an in-person captioner at each performance is substantial. This has resulted in a decision that could undercut the meaningful access precedent of this circuit. *See, e.g.*, *Argenyi v. Creighton Univ.*, 703 F.3d 441, 449 (8th Cir. 2013).

Under the meaningful access standard, "aids and services 'are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons,' but they nevertheless 'must afford handicapped persons equal opportunity to . . . gain the same benefit.'" *Id.* at 449 (alteration in original) (quoting *Loye v. Cty. of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010)). While the ADA is broad in scope, the law does not require institutions to provide all requested auxiliary aids and services but instead only "necessary" ones. *Id.* The law tests what level of provision of necessary aids and services is required for meaningful access without reaching the affirmative defenses. *See Loye*, 625 F.3d at 499. This is an

"inherently fact-intensive" inquiry that "largely depends on context." *See Argenyi*, 703 F.3d at 449 (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)).

Here, the Fox originally provided its hearing-impaired patrons with an American Sign Language interpreter. And then, after litigation ensued, the Fox provided Childress with the specific accommodation she asked for, live captioning at one showing of each requested production. When Childress requested live captioning at a different showing, the Fox provided captioning at her requested showing. In fact, since their original compromise was reached, there is no evidence that any of the plaintiffs have been denied captioning at a requested showing.

Yet the court concludes that, although the Fox provides real time captioning from a live, in-person court reporter for at least one performance of every production at its theater and has demonstrated a willingness to work with patrons to accommodate requests for alternative dates, it must instead provide this service at *every* performance of every production in order to provide meaningful access. Childress expressly argued, and the court seemingly agrees, the Fox has no ability to limit the frequency of the live captioning services it provides. In my view, this conclusion effectively replaces the meaningful access test with an identical access standard. I also believe this conclusion improperly cabins arguments about what access qualifies as meaningful to the context of affirmative defenses even though the defenses test whether the auxiliary aid or service must be provided at all, not what level of access is meaningful. *See, e.g., id.* at 451 n.3. It is the meaningful access analysis, not the undue burden standard, that determines whether it is necessary to provide a court reporter at every performance.

Fortunately for all concerned, advanced technology appears poised to moot this issue as a practical matter by making real time captioning of live performances inexpensive and routine. This does not, however, negate the legal problem. A legal

-13-

standard requiring identical access in the context of auxiliary aids and services may have far-reaching unforeseen consequences in other contexts. Identical access would possibly require, for example, 24/7 sign language translation in hospitals as well as a myriad of other requirements. Such a result is not consistent with our meaningful access precedent. *See Loye*, 625 F.3d at 499 (affirming district court's opinion rejecting the contention that "an interpreter is mandated for every meeting"). The benefit the Fox offers is the opportunity to attend traveling Broadway productions. Access to this benefit does not require live court reporters at each and every performance of every production in order to be meaningful.

I respectfully dissent.

_____