# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3046
_____

Scott Gustafson

*Plaintiff - Appellant*

v.

Bi-State Development Agency of the Missouri-Illinois Metropolitan District, doing business as Metro, doing business as Metro Transit, doing business as Metrobus, doing business as Metrolink

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: June 17, 2021
Filed: March 28, 2022
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

In this action brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794, Scott Gustafson

appeals following the district court's[1] adverse grant of summary judgment in favor of Bi-State Development ("Bi-State"). The district court dismissed Gustafson's claims, finding that some of his claims and arguments were barred by the doctrine of judicial estoppel, that his claim regarding MetroBus drivers not stopping for him at a bus stop was barred by a previous settlement agreement between the Missouri Commission on Human Rights ("the Commission") and Bi-State, and his occasional problems with MetroBus drivers do not establish a violation of the ADA. We affirm.

## I.    BACKGROUND

Bi-State is a government entity that provides public rail, bus, and paratransit services in Missouri and Illinois pursuant to an interstate compact. Gustafson has relied on Bi-State's fixed-route bus and rail service as his primary mode of transportation in the St. Louis metropolitan area since 1997. Although Gustafson is blind, he can independently use Bi-State's public transportation system with the assistance of his guide dog or a cane. By his own estimate, Gustafson typically used the Bi-State bus system between 30 to 100 times, and the rail system between 20 to 50 times, in any given year.

In November 2006, Gustafson filed a complaint with the Commission alleging Bi-State denied him access to its services in violation of the Missouri Human Rights Act ("MHRA"). As provided by statute, the Commission commenced administrative proceedings against Bi-State on Gustafson's behalf. Gustafson elected not to intervene in the proceedings, which ended in a 2011 settlement agreement ("Agreement") between the Commission and Bi-State. By its terms, the Agreement signaled Bi-State's commitment to improve access across, among other things, its technology, fare collection, internet publications, and signage. The Agreement purported to resolve "any and all charges, claims, suits, demands, damages, . . . and causes of action . . . arising out of, related to or based upon any

---

[1]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri.

fact(s) or event(s) which occurred on or prior to the date" of the Agreement. Even though Gustafson refused to participate in the Agreement, he did not seek judicial review of its terms.

Gustafson filed a second complaint with the Commission in April 2014, which he later amended in November 2014, alleging that Bi-State bus drivers discriminated against him based on his disability when they drove past him on three specific occasions: December 26, 2013; June 13, 2014; and August 5, 2014 (the "drive-by claims"). Unlike his earlier complaint, this time Gustafson sought a right-to-sue letter, which the Commission issued on November 30, 2015.

Gustafson originally filed the instant lawsuit in the Circuit Court of the City of St. Louis, alleging discrimination violations under the MHRA. Bi-State removed the case to federal court after Gustafson added new claims under the ADA and the Rehabilitation Act. The district court determined that Bi-State was not subject to the MHRA at the time of Gustafson's allegations and dismissed the MHRA claims.[2] After Gustafson filed his Fourth Amended Complaint, Bi-State moved for judgment on the pleadings asserting, among other things, the suit was an improper attempt to enforce certain federal transportation regulations through a private right of action. In response, Gustafson stated both in his brief and at the hearing that he "did not seek to vindicate a private right of action to enforce such regulations," but rather the presence of any regulatory violation in the complaint was included as evidence of intentional discrimination. The district court denied Bi-State's motion and, based on the assurances that Gustafson was not pursuing a private right of action under the regulations, prohibited Gustafson from asserting such a private right of action at trial.

---

[2]See Jordan v. Bi-State Dev. Agency, 561 S.W.3d 57 (Mo. Ct. App. 2018) (holding Bi-State was not subject to the MHRA because of differing standard for evaluating discrimination as compared to Illinois law). Although the MHRA has since been amended to be consistent with the standards set forth in the Illinois Human Rights Act, the alleged violations occurred prior to amendment and the dismissed MHRA claims are not before us on appeal.

-3-

In January 2020, the parties filed cross-motions for summary judgment. Bi-State raised two primary arguments: (1) Gustafson's claims were barred by the terms of the Agreement; and (2) Gustafson was not denied meaningful access to Bi-State's services. Gustafson sought summary judgment on the issue of liability, claiming Bi-State: (1) unlawfully discriminated against him by depriving him of meaningful access as proscribed by both the federal statutes and regulations; and (2) discriminated against and segregated him by failing to provide paratransit services in a manner consistent with the statutes and regulations. Gustafson re-asserted the drive-by claims as evidence of Bi-State's discrimination.

The district court granted summary judgment in favor of Bi-State on all claims. The court concluded that judicial estoppel barred Gustafson's allegations arising out of the regulations and, even in the absence of estoppel, the statutory text did not create a private right of action to enforce those regulations. The district court refused to consider Gustafson's paratransit segregation claim because he did not seek to amend the complaint to add the claim prior to summary judgment. Finally, the district court held the drive-by claims were barred by the terms of the Agreement and, alternatively, that summary judgment was appropriate because the drive-by claims are insufficient as a matter of law to establish a denial of meaningful access. Gustafson appeals.

## II. DISCUSSION

### A. Judicial Estoppel

We review the district court's application of judicial estoppel for abuse of discretion, including in the summary judgment context. Stallings v. Hussmann Corp., 447 F.3d 1041, 1046 (8th Cir. 2006). "[W]e will not overturn a district court's discretionary application of the judicial estoppel doctrine 'unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors.'" Id. at 1046–47 (quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004)).

-4-

Whenever a party takes a position in a legal proceeding and succeeds in maintaining that position, the doctrine of judicial estoppel operates to prevent that party from later assuming a contrary position. Scudder v. Dolgencorp, LLC, 900 F.3d 1000, 1006 (8th Cir. 2018). We consider three non-exhaustive factors in determining whether the doctrine is applicable: "(1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that the court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the party if not estopped." Opportunity Fin., LLC v. Kelley, 822 F.3d 451, 456 (8th Cir. 2016). In contrast, judicial estoppel does not apply when the prior position arose out of "a good-faith mistake rather than as part of a scheme to mislead the court." Stallings, 447 F.3d at 1049 (quotation omitted).

On the facts of this case, all three factors weigh in favor of judicial estoppel. First, Gustafson's position on summary judgment is inconsistent with the position he took on Bi-State's motion for a judgment on the pleadings. At the November 12, 2019, motion hearing Gustafson's counsel unequivocally stated: "The regs do not provide a private right of action." In his corresponding brief, Gustafson stated he "did not seek to vindicate a private right of action to enforce such regulations." These statements are inconsistent with Gustafson's subsequent position that there is a private right of action. See United States v. Hamed, 976 F.3d 825, 829 (8th Cir. 2020).

The second factor also weighs in favor of estoppel. At the motion hearing, Gustafson persuaded the district court that he was not pursuing a private right of action under the federal regulations. In denying Bi-State's motion for judgment on the pleadings, the district court expressly accepted Gustafson's position, stating it had "no need to address whether Gustafson has a right to privately enforce federal regulations." Because the Fourth Amended Complaint alleged that Bi-State was

liable for failing to comply with the regulations, acceptance of Gustafson's statement to the contrary would lead to a perception that the court had been misled.

Finally, allowing Gustafson to take an inconsistent position would give him an unfair advantage in the litigation. Gustafson failed to object to the order on Bi-State's motion for judgment on the pleadings that expressly stated: "Gustafson will not be permitted to raise at trial Bi-State's alleged failure to comply with federal regulations as claims pursuant to the ADA or the Rehab Act." To later permit Gustafson to assert a private right of action under the regulations would present an entirely different trial for Bi-State to defend, after the close of discovery and relying on the district court's order indicating that these issues were off the table. We find no abuse of discretion in applying judicial estoppel. It follows that we need not address whether Gustafson has a private right of action under the regulations. Cf. Segal v. Metro. Council, No. 20-3728, at 7-8 (8th Cir. 2022).

## B.     *Meaningful Access*

Gustafson next argues the district court erred when it determined his claims were barred by the Agreement and, alternatively, granted summary judgment to Bi-State on the merits. Even assuming the Agreement does not operate to bar Gustafson's claims, those claims would still fail because Gustafson cannot demonstrate Bi-State denied him meaningful access to its services.

We review a district court's decision on cross-motions for summary judgment *de novo*. Childress v. Fox Assocs., LLC, 932 F.3d 1165, 1170 (8th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "We may affirm the district court's grant of summary judgment on any ground supported by the record." Rossley v. Drake Univ., 979 F.3d 1184, 1186 (8th Cir. 2020) (quotation omitted).

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "[W]e construe Title II of the ADA as requiring that qualified persons with disabilities receive meaningful access to a public entity's services, not merely limited participation." Loye v. Cnty. of Dakota, 625 F.3d 494, 496 (8th Cir. 2010) (quotation omitted); see also Argenyi v. Creighton Univ., 703 F.3d 441, 449 (8th Cir. 2013) (applying "meaningful access" to the Rehabilitation Act). Cases interpreting either the ADA or the Rehabilitation Act are "applicable and interchangeable" because the Acts are "similar in substance." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (quoting Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998)). Under the meaningful access standard, services "are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to . . . gain the same benefit." Loye, 625 F.3d at 499 (quoting Alexander v. Choate, 469 U.S. 287, 305 (1985)).

Applying this law, meaningful access is determined at the summary judgment stage by comparing Gustafson's experience with the service provided to non-disabled Bi-State riders. See Childress, 932 F.3d at 1171 (analyzing meaningful access by comparing the experiences of hearing-impaired persons with those without hearing impediments when a theater only provided one captioned performance per show); Durand v. Fairview Health Servs., 902 F.3d 836, 842 (8th Cir. 2018) (requiring courts to identify hearing-abled peer group to determine whether hearing-impaired individuals were provided an equal opportunity to access the same benefits). This determination "'is inherently fact-intensive' and 'largely depends on context.'" Argenyi, 703 F.3d at 449 (quoting Liese v. Indian River County Hosp. Dist., 701 F.3d 334, 342–43 (11th Cir. 2012)).

Viewing the facts most favorably to Gustafson, he has failed to show that Bi-State denied him meaningful access to its services. Gustafson alleges three incidents of discrimination by Bi-State during an eight-month period, which Bi-States

-7-

concedes constitute drive-by complaints. Gustafson estimated that he typically used Bi-State bus and rail service between 50 to 100 times each year. However, there is nothing in the record to indicate that Gustafson's experiences were anything more than "frustrating, but isolated, instances" which "do not, without more, establish a violation of the ADA." Midgett v. Tri-County Metro. Transp. Dist. of Oregon, 254 F.3d 846, 848 (9th Cir. 2001) (finding that four occasions of problems with wheelchair lifts do not establish an ADA violation, or threat of future violations, in review of preliminary injunction denial). Because Gustafson has not shown he was denied an opportunity to access the same services as non-disabled riders,[3] the district court did not err in disposing of his claims at summary judgment.

### C.    *Paratransit Segregation*

Gustafson also contends the district court erred when it determined that he did not seek leave to amend his complaint to add a paratransit segregation claim before summary judgment. Gustafson asserts he sought leave to amend but the request was denied as futile. In response, Bi-State argues we lack jurisdiction because Gustafson's notice of appeal did not designate the order on his motion to amend his complaint. In his reply brief, Gustafson asserts that "all issues are within the scope of the notice of appeal" because the designated final judgment and order granting summary judgment "overtly take[] issue with the intertwined" order denying leave to amend.

---

[3]To the extent Gustafson alleges Bi-State failed to provide him meaningful access to its signage, announcements, website, and mobile application, we need not address those claims. An appellant's brief must contain "a concise statement of the case setting out the facts relevant to the issues submitted for review." FED. R. APP. P. 28(a)(6). "To be reviewable, an issue must be presented in the brief with some specificity. Failure to do so can result in waiver." Meyers v. Starke, 420 F.3d 738, 743 (8th Cir. 2005). In his brief, Gustafson identified the issue but failed to set forth the facts and circumstances relevant to his claim sufficient for our consideration. We therefore consider the question to be waived.

As a prerequisite for jurisdiction, an appellant must file a notice of appeal that "designate[s] the judgment, order, or part thereof being appealed." Hallquist v. United Home Loans, Inc., 715 F.3d 1040, 1044 (8th Cir. 2013) (quoting FED. R. APP. P. 3(c)(1)(B)). We have "held on numerous occasions that a notice which manifests an appeal from a specific district court order or decision precludes an appellant from challenging an order or decision that he or she failed to identify in the notice." Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002).

Our circuit has "a policy of liberal construction of notices of an appeal in situations where intent is apparent and there is no prejudice to the adverse party." Spectra Commc'ns Group, LLC v. City of Cameron, Mo., 806 F.3d 1113, 1118 (8th Cir. 2015). For example, an "intent to appeal" may be "apparent from the procedural history of the case and the inclusion of the orders on the appeal information form," Berdella v. Delo, 972 F.2d 204, 208 (8th Cir. 1992), or when the amended complaint expressly reserved the right to appeal the dismissal of a claim and the parties addressed the merits in their briefs, Spectra, 806 F.3d at 1118.

Here, however, the notice of appeal expressly references only the summary judgment order and judgment, stating "Gustafson hereby appeals to the United States Court of Appeals for the Eighth Circuit from the Final Judgment [ECF Nos. 143, 144] entered in this action on August 27, 2020." The notice of appeal does not identify the order denying Gustafson's motion to amend his complaint for a fifth time (*i.e.*, Docket No. 109), and there is no apparent intent to appeal this order. The appeal information form likewise does not mention the order denying Gustafson's motion to amend. Gustafson has not expressly reserved the right to appeal the denial of his motion to amend his complaint, nor has he complied with FED. R. APP. P. 3(c)(1)(B). We lack jurisdiction to review the denial of Gustafson's motion to amend the complaint. Parkhill, 286 F.3d at 1059.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____