No. 95-2959

Moog World Trade Corporation,    *
                                 *

    Plaintiff - Appellant,   *
                                 *  Appeal from the United States

    v.                      *  District Court for the
                                 *  Eastern District of Missouri.

Bancomer, S.A.; Boatmen's    *
National Bank of St. Louis,    *
                                 *

    Defendants - Appellees.  *

Submitted:  February 16, 1996

Filed:  July 30, 1996

Before LOKEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

LOKEN, Circuit Judge.

This case requires us to apply the familiar due process limitation on personal jurisdiction to the rather unfamiliar realities of financing international trade. Moog World Trade Corp. ("Moog") agreed to sell automobile parts to its customer in Mexico, Commercializadora de Refacciones en Generales S.A. ("CRG"). To finance this purchase, CRG had its Mexican bank, Bancomer, S.A., issue an irrevocable commercial letter of credit naming Moog as beneficiary. When Moog's draw under the letter of credit was dishonored by Boatmen's National Bank, the Missouri confirming bank, Moog sued Boatmen's and Bancomer. The district court[1] dismissed Bancomer for lack of personal jurisdiction, and Moog appeals that ruling. We affirm.

---

[1] The HONORABLE CATHERINE D. PERRY, United States District Judge for the Eastern District of Missouri.

Bancomer issued the letter of credit in August 1992 at the request of its customer, CRG. The letter of credit promised that Moog as beneficiary would be paid $383,636 at Boatmen's offices in St. Louis upon Moog's timely presentation of a sixty-day time draft accompanied by specified documents confirming that Moog had shipped the auto parts to CRG. Bancomer issued the letter of credit by a tested telex to Boatmen's. Boatmen's then sent the letter of credit to Moog, with a cover letter explaining:

> We enclose herewith an authenticated irrevocable letter of credit opened in your favor by [Bancomer].
>
> *   *   *   *   *
>
> Drafts are to be drawn on the Boatmen's National Bank of St. Louis, St. Louis, Missouri.
>
> *   *   *   *   *
>
> We [Boatmen's] add our confirmation to the issuing bank's letter of credit and engage with you that draft(s) and/or documents drawn under and in compliance with the terms of this credit will be duly honored.[2]

Two weeks before the letter of credit expired, Moog presented a draft and supporting documents to Boatmen's, which dishonored the draw, noting discrepancies between the shipping documents and the letter of credit's specifications. Moog had time to cure these discrepancies by submitting amended documents to Boatmen's.

---

[2]Confirmation "constitutes a definite undertaking of [Boatmen's], in addition to that of [Bancomer] . . . to pay, or that payment will be made," if Moog makes a proper draw under the letter of credit. Uniform Customs and Practices for Documentary Credits, Art. 10.b.i., Int'l Chamber of Commerce Pub. No. 400 (eff. Oct. 1, 1984) ("UCP"). The UCP is an internationally accepted codification of banking practice and custom regarding letters of credit. Under Missouri law, if a letter of credit so provides, as Bancomer's did, the UCP supplants Article 5 of Missouri's uniform commercial code. See Mo. Ann. Stat. § 400.5-102(4).

Instead, Moog instructed Boatmen's to present the dishonored documents to Bancomer in Mexico.  When Bancomer refused to honor the draw, citing six alleged documentary discrepancies, a Moog representative and its attorney visited Bancomer's office in Guadalajara, Mexico, requesting an explanation of the dishonor.  Bancomer responded that Moog should contact Boatmen's.

With the letter of credit now expired, Moog brought this diversity action, claiming wrongful dishonor and untimely notice of dishonor by both banks.  The district court dismissed Bancomer for lack of personal jurisdiction and dismissed the untimely-notice-of-dishonor claim against Boatmen's on the merits.  Moog dismissed its wrongful dishonor claim against Boatmen's without prejudice and appealed the district court's rulings.  Moog later dismissed its appeal against Boatmen's, leaving for us only the question whether the district court has personal jurisdiction over Bancomer.

"Once a defendant has challenged a federal court's jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists." Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990). Bancomer challenged the district court's jurisdiction, submitting uncontroverted evidence that it has no office, employee, or property in Missouri; is not qualified to do business in Missouri; pays no Missouri taxes; and transacts no other business in Missouri.  Moog responded by submitting uncontroverted evidence that, in the two years prior to August 1992, Bancomer issued thirty-six letters of credit in favor of Missouri beneficiaries, in the total amount of $4.7 million, including four prior letters of credit at the request of CRG for the benefit of Moog in amounts of $100,000, $200,000, $250,000, and $389,000.  Because the record does not reflect the status of the transaction between Moog and CRG underlying the letter of credit, and because the letter of credit is independent of that underlying transaction, the personal jurisdiction issue turns entirely upon the letter of credit facts of record.  We review this jurisdiction

issue de novo.  See General Elec. Capital Corp. v. Grossman, 991 F.2d 1376, 1387 (8th Cir. 1993).

## II.

The federal court in a diversity case must determine whether defendant is subject to the court's jurisdiction under the state long arm statute, and if so, whether exercise of that jurisdiction comports with due process.  As pertinent here, the Missouri long arm statute confers jurisdiction over "any cause of action arising from . . . (1) [t]he transaction of any business within this state [or] (2) [t]he making of any contract within this state."  Mo. Ann. Stat. § 506.500.1.  Missouri courts have construed this statute "to extend the jurisdiction of the courts of this state over nonresident defendants to the extent permissible under the Due Process Clause."  State ex rel. Deere & Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo. banc 1970).  Jurisdiction must be based upon "the act or conduct set forth in the statute" (as opposed to conduct not encompassed by the statute that might otherwise be a permissible basis for jurisdiction), and the cause of action must arise from the nonresident defendant's activities in Missouri.  Scullin Steel Co. v. National Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir. 1983).

Though it is often difficult to apply, the governing due process standard is well-established in this circuit:

> The due process clause requires there be "minimum contacts" between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. Worldwide Volkswagen v. Woodson, 444 U.S. 286, 291 (1980). Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," id. at 297, and when "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken

-4-

> v. Meyer, 311 U.S. 457, 463 (1940)).  In assessing the
> defendant's "reasonable anticipation," there must be "'some act
> by which the defendant purposefully avails itself of the
> privilege of conducting activities within the forum State, thus
> invoking the benefits and protections of its laws.'"  Burger
> King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting
> Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

General Electric, 991 F.2d at 1387, quoting Soo Line R.R. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528-29 (8th Cir. 1991).  To put the issues of fair play, reasonable anticipation, and purposeful availing in proper perspective, we must examine the purposes and functioning of an international commercial letter of credit.

Letters of credit have been used for nearly 3000 years.  Though they stretch common law contract principles such as consideration, letters of credit were eventually accepted and enforced by Anglo-American common law courts.  See Rufus J. Trimble, The Law Merchant and the Letter of Credit, 61 Harv. L. Rev. 981, 983-88 (1948).  In the present-day United States, letter of credit principles have been codified in Article 5 of the uniform commercial code, which is generally consistent with the internationally promulgated UCP.

The commercial letter of credit is widely used to assist sales transactions, including international export/import transactions.  The parties to such a transaction have conflicting needs and concerns.  The exporter-seller does not wish to part with its goods without knowing it will be paid, even if the buyer later changes its mind, becomes insolvent, or claims upon inspection that the goods are non-conforming.  The seller also wants prompt payment in its own currency, even if the buyer needs credit financing.  The importer-buyer, on the other hand, may need credit financing and in any event does not wish to pay for the goods without firm evidence that they have been shipped.  Each party typically fears litigation in the other party's "home court."

The commercial letter of credit bridges these differences. The buyer's bank issues the letter of credit naming the seller as beneficiary. The letter of credit is the issuer's irrevocable obligation to pay a stated amount of money to the seller-beneficiary, at a stated time and place and in a specified currency. To obtain payment, the seller must present specified documents, typically, the seller's invoice and shipping documents, thereby confirming to the buyer that (i) the right goods (ii) are in the hands of a common carrier (iii) with the agreed-upon costs prepaid. The letter of credit usually requires the issuing bank to honor or dishonor the seller's presentation (draw) while the goods are in transit. If the bank dishonors, it must return the shipping documents to the seller, who then has the exclusive right to claim the goods from the carrier. If the draw is honored, the seller is promptly paid, or in a credit sale is promised payment at a specified time by the credit-worthy issuing bank, a promise the seller can convert to immediate cash by discounting. See generally Burton V. McCullough, Letters of Credit §§ 1.03-1.04 (1995).

This commercial letter of credit transaction creates three distinct contractual relationships -- the underlying transaction between the buyer and seller; the buyer's agreement to reimburse the issuing bank for payments under the letter of credit; and the letter of credit itself. See McCullough, § 1.05[1] at 1-35 to 1-39 (1995); B.E.I. Int'l, Inc. v. Thai Military Bank, 978 F.2d 440, 442 (8th Cir. 1992). The simplest commercial letter of credit contains the issuer's irrevocable promise to pay drafts drawn by the beneficiary at the issuer's counter (place of business). But in an international transaction, the seller typically wants to present the draw locally and to be paid in its own currency; the seller may also want a local bank to decide whether a draw complies with the letter of credit's documentary requirements. The seller can meet these concerns by persuading the buyer to have its bank issue a letter of credit payable at a bank near the seller's place of business. That bank may be an advising bank -- simply a conduit

for the issuing bank's decisions -- or it may be a confirming bank that decides whether the draw complies and thereby "add[s] its own liability to that of the issuing bank."  Venizelos, S.A. v. Chase Manhattan Bank, 425 F.2d 461, 465 (2d Cir. 1970).  Here, Moog persuaded CRG to have Bancomer issue the letter of credit with Boatmen's as confirming bank.  With these fundamental commercial concepts in mind, we return to the jurisdiction issue.

## A.

Moog first argues that Bancomer is subject to personal jurisdiction because Bancomer made a contract in Missouri, for purposes of § 506.500.1(2), when it issued an irrevocable letter of credit that Moog "accepted" by presenting a draft for payment. We disagree.  When Bancomer issued its letter of credit, it did not *make* a contract with Moog, it *performed* a contract with its Mexican customer, CRG.  The identity and location of CRG's beneficiary was of little if any concern to Bancomer, because it looked to CRG for both its letter of credit fee and reimbursement of any payment Bancomer might make under the credit.  True, the letter of credit created a separate, conditional obligation running from Bancomer to Moog as beneficiary.  But that bare letter of credit obligation, while contractual in nature, was not the making of a contract with Moog.  Nor was it the transacting of business in Missouri, for purposes of § 506.500.1(1).  See State ex rel. Bank of Gering v. Schoenlaub, 540 S.W.2d 31 (Mo. banc 1976) (Nebraska bank which paid 22 drafts drawn on a Missouri bank payable from the account of the Nebraska bank's customer was not subject to Missouri long arm jurisdiction in a suit to recover on six additional drafts the Nebraska bank dishonored).  See also Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1113-15 (11th Cir. 1990) (no jurisdiction in Florida over Swiss bank for alleged breach of agreement to issue letter of credit payable in Florida because beneficiary is not a party to an agreement to issue), cert. denied, 499 U.S. 937 (1991).

Thus, this theory founders on the first prong of the personal jurisdiction analysis, the scope of the Missouri long-arm statute.

Moreover, relying upon traditional due process principles, other federal courts have been virtually unanimous in holding that a bank issuing a commercial letter of credit at the request of its customer, payable at the bank's offices, does not without more subject itself to personal jurisdiction in a distant forum, such as a court where the letter of credit beneficiary resides. See Pacific Reliant Indus. v. Amerika Samoa Bank, 901 F.2d 735, 737 (9th Cir. 1990); Leney v. Plum Grove Bank, 670 F.2d 878, 880 (10th Cir. 1982); Empire Abrasive Equipment Corp. v. H.H. Watson Inc., 567 F.2d 554, 558 (3d Cir. 1977); Occidental Fire & Cas. Co. v. Continental Ill. Nat'l Bank, 689 F.Supp. 564, (E.D.N.C. 1988). Similarly, courts have concluded that there is no jurisdiction over the foreign issuer of a letter of credit payable elsewhere in the United States. See Chandler v. Barclays Bank, PLC, 898 F.2d 1148, 1151 (6th Cir. 1990) (Michigan court has no jurisdiction over Egyptian issuer of a letter of credit payable at confirming bank in New York); H. Ray Baker, Inc. v. Associated Banking Corp., 592 F.2d 550, 552 (9th Cir.), cert. denied, 444 U.S. 832 (1979) (California court has no jurisdiction over Phillipine issuer of letter of credit payable in New York); Southern Plastics Co. v. Southern Commerce Bank, 423 S.E.2d 128, 132 (S.C. 1992). As the court explained in Empire Abrasive, 567 F.2d at 558:

> We do not think that by issuing a letter of credit for a Rhode Island customer, calling for its performance in Rhode Island, the bank can be said to have subjected itself to the adjudicatory authority of Pennsylvania with respect to its obligations under the letter of credit solely because the beneficiary was a Pennsylvania corporate resident.

We conclude that this reasoning is even more compelling when the issuer is a foreign bank that has financed an import transaction with a commercial letter of credit payable at the

-8-

foreign bank's counter.  The U.S. seller-beneficiary could have better protected its interests by delaying shipment until the letter of credit was honored, *or* by reclaiming the goods from the carrier after dishonor, *or* by making the letter of credit payable at the counter of a U.S. confirming bank.  When the seller has failed to protect itself in this manner, it is not fair play -- and it risks the future availability of this inexpensive international banking device -- to subject the foreign bank to the burdens of wrongful dishonor litigation in the United States.

**B.**

Moog next contends that there is personal jurisdiction in Missouri because Bancomer made its letter of credit payable at the Missouri counter of a confirming bank, Boatmen's.  Bancomer's decision (at CRG's request) to make its letter of credit payable in Missouri, and to enlist the services of a local confirming bank, is jurisdictionally significant, as several of the above-cited cases have noted in dicta.  See Leney, 670 F.2d at 880; H. Ray Baker, 592 F.2d at 553; Empire Abrasive, 567 F.2d at 558. For example, when Boatmen's agreed to act as confirming bank, Bancomer became contractually obligated to reimburse Boatmen's if it properly honored a draw.  See UCP 400, Art. 16.a.  Had Bancomer refused to reimburse Boatmen's for honoring a draw, we have little doubt that the Missouri long-arm statute would confer personal jurisdiction over Bancomer in an action by Boatmen's asserting breach of this contractual duty to reimburse.

But that does not resolve this case.  Boatmen's *dishonored* Moog's draw,  In doing so, Boatmen's acted on its own behalf as confirming bank. The letter of credit provided that draws could be presented only at Boatmen's counter.  Thus, when Moog instructed Boatmen's to present the dishonored draw to Bancomer, Moog did not make an authorized draw under the letter of credit.  Rather, it asked that Bancomer, with CRG's permission, waive the documentary

discrepancies that caused Boatmen's to dishonor. In other words, Moog sought relief outside the four corners of the letter of credit. That is a recognized commercial practice, indeed, it is expressly referenced in the latest revision of the UCP. <u>See</u> Uniform Customs and Practice for Documentary Credits/1993 Revision, Art. 14.c., ICC Pub. 500. But Moog's unilateral action in making this request directly to Bancomer, and Moog's follow-up visit to Guadalajara seeking Bancomer's explanation for its "dishonor," cannot be labeled the transacting of business by Bancomer in Missouri. Not surprisingly, therefore, Moog has cited no prior case supporting this contention.

In these circumstances, we agree with the district court's resolution of the personal jurisdiction issue. Moog protected its interests under the letter of credit when it obtained confirmation by Boatmen's, which then became subject to suit in Missouri for wrongful dishonor. Bancomer as foreign issuer took no action beyond securing a local confirming bank that would subject it to the jurisdiction of the Missouri courts. It is more consistent with fair play and the need for efficient international markets to limit Moog in this lawsuit to its wrongful dishonor claim against Boatmen's, which it has abandoned. The fact that Bancomer had previously issued numerous commercial letters of credit naming various Missouri beneficiaries to assist other export/import transactions does not, in our view, alter the analysis. <u>See</u> <u>Occidental Fire</u>, 689 F. Supp. at 565 (seven letters of credit); <u>see generally</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-16 & n.9 (1984).[3]

_____

[3]A more difficult question would be whether Missouri courts have personal jurisdiction over a foreign bank that issued a commercial letter of credit payable at the counter of a Missouri bank that is not a confirming bank. In that case, the foreign issuer makes the final decision whether to pay *in Missouri*, and the beneficiary has no one to sue for wrongful dishonor other than the issuer. We express no view as to how this issue should be decided.

## C.

Finally, Moog argues that the district court erred in deciding the personal jurisdiction issue before Bancomer responded to Moog's discovery requests addressing that issue. In responding to Bancomer's motion to dismiss, Moog did not ask the district court for leave to complete jurisdictional discovery. Its discovery requests were served after the motion to dismiss was briefed but before the district court ruled. When the court ruled adversely, Moog cited the pending discovery requests in its motion to reconsider without explaining how Bancomer's discovery responses might affect the jurisdiction issue. We have examined the discovery requests. Most relate to the merits of the lawsuit. Those seeking disclosure of other letter of credit transactions involving Missouri beneficiaries are immaterial given the array of transactions already disclosed in the jurisdiction motion papers. In these circumstances, the district court in declining Moog's tardy request for more discovery did not commit a "gross abuse of discretion resulting in fundamental unfairness." Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir.) (standard of review), cert. denied, 114 S. Ct. 209 (1993).

The judgment of the district court is affirmed.

A true copy.

Attest:


        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-