# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2800
_____

Hawkeye Gold, LLC

*Plaintiff - Appellant*

v.

China National Materials Industry Import and Export
Corporation, doing business as Sinoma

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: September 21, 2023
Filed: December 19, 2023
_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Appellant Hawkeye Gold, LLC, an Iowa-based seller of livestock feed, brought this action against China National Materials Industry Import and Export Corporation, commonly known as Sinoma, to recover an unpaid default judgment Hawkeye Gold obtained in a prior action against Non-Metals, Inc., Sinoma's now-defunct wholly owned United States subsidiary, for breach of a contract to purchase livestock feed.

After six years of contentious litigation, the district court[1] dismissed Hawkeye Gold's Second Amended Complaint for lack of personal jurisdiction. Hawkeye Gold appeals, raising numerous issues. We affirm.

## I. Background

Hawkeye Gold markets livestock feeds, including a corn byproduct known as dried distiller's grain with solubles ("DDGS"). At the time in question, Non-Metals, an Illinois or Arizona corporation based in Illinois, purchased livestock feed from U.S. suppliers for resale to customers in China, including Sinoma, Non-Metals' corporate parent. Sinoma is a global international "trade platform" for agricultural and other products. It is a subsidiary of China National Materials Group Corporation, an affiliate of the Central Government of China.

Between 2011 and 2014, Non-Metals entered into dozens of sales contracts, on Hawkeye Gold's Sales Contract form, in which Non-Metals purchased DDGS livestock feed that Non-Metals then resold in China. In 2010, a new genetic trait known as MIR162 was introduced that became part of the DDGS market worldwide, approved by 19 countries including the United States and then under review in China. In 2012 and 2013, Hawkeye Gold received a license from the Chinese government approving the quality of its DDGS feed. Sinoma representatives also gave Sinoma's approval after inspecting Hawkeye Gold's Iowa facilities.

In December 2013, an agency of the Chinese government announced that it was making efforts to prevent the importation of DDGS containing the MIR162 genetic trait. The U.S. grain industry found no objective basis for this policy and considered it a protectionist action intended to impact high feed prices in China. With

---

[1]The Honorable Stephen B. Jackson, Jr., United States Magistrate Judge for the Southern District of Iowa.

knowledge of the announcement, but considering it a trade maneuver, Sinoma continued purchasing Hawkeye Gold DDGS from Non-Metals. On July 22, 2014, Hawkeye Gold and Non-Metals executed another DDGS Sales Contract ("the Contract"), in which Hawkeye Gold agreed to sell 6,000 metric tons of DDGS to Non-Metals, to be shipped to Qingdao, China, between August 1 and September 15, 2014. The Contract names Sinoma as the consignee. Two days later, the Chinese government, strengthening its efforts to ban MIR162, announced that DDGS shipments into China would be rejected or destroyed unless accompanied by a U.S. government certification that the DDGS did not contain MIR162. When Hawkeye Gold was unable to obtain certification for 1,000 metric tons of DDGS already en route to China under the Contract, Non-Metals refused to pay Hawkeye Gold for the DDGS under the terms of the Contract. Hawkeye Gold diverted the DDGS to other destinations, sold it at a substantial loss, and sued Non-Metals for breach of contract in the Southern District of Iowa in October 2015.[2]

Non-Metals failed to answer Hawkeye Gold's complaint. After the district court entered a default, Hawkeye Gold moved for a default judgment. It considered seeking to add Sinoma as a defendant to the contract action but decided on a later action against Sinoma. The district court entered a default judgment holding Non-Metals liable for $748,103.69 in contract damages and $8,089.07 in attorneys fees

---

[2]Hawkeye Gold alleged that it diverted the DDGS at sea and sold it at a loss to mitigate its damages. If litigated, this would be a debatable assertion. Not only did Hawkeye Gold allow the DDGS to be shipped knowing the Government of China was likely soon to ban importation of the MIR162 trait, it also failed to insist that Non-Metals obtain an international commercial letter of credit, the prevailing way to protect sellers in international export/import transactions. See Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1385-86 (8th Cir. 1996). Of course, Non-Metals might have refused to provide letter-of-credit protection -- the extensive record is silent on that question -- in which case it would be clear that Hawkeye Gold knowingly took this substantial risk of loss in hopes of a quick profit.

and costs.  Hawkeye Gold, LLC v. Non-Metals, Inc., No. 4:15-cv-00230, 2016 WL 8290123 (S.D. Iowa Jan. 27, 2016).

In June 2016, Hawkeye Gold filed this lawsuit against Sinoma seeking to recover its unpaid judgment for breach of contract from Sinoma as the disclosed principal of Non-Metals, an agent acting within the scope of its actual and apparent authority.  Non-Metals was dissolved by the end of 2016 without paying Hawkeye Gold under the default judgment. When Sinoma failed to answer this second complaint, Hawkeye Gold moved for entry of default.  The clerk entered the default in December 2016.  In February 2017, the district court granted Sinoma's motion to set aside the default because service of process was improper.  After four more years of disputed attempts to serve process, Sinoma answered Hawkeye Gold's complaint in May 2021, denying "that Non-Metals was an agent of Sinoma" and asserting lack of personal jurisdiction as an affirmative defense because "Sinoma did not have the minimum contact[s] with the forum state."  See Fed. R. Civ. P. 12(b)(2).  Some months later, Hawkeye Gold filed its Second Amended Complaint, which added allegations regarding the relationship of the parties and a claim for punitive damages. Hawkeye Gold also filed three motions to compel discovery responses and production of requested documents, which the district court granted in part and denied in part.

In February 2022, Sinoma moved to dismiss Hawkeye Gold's Second Amended Complaint, arguing as relevant here that the district court lacked personal jurisdiction.  Hawkeye Gold resisted the motion, supporting its resistance with declarations, deposition testimony, exhibits, and a report from an expert on Chinese law.  With that motion pending, Hawkeye Gold moved for sanctions under Rule 37 based on Sinoma's alleged discovery violations, seeking an order "that Sinoma is liable as principal for the acts of its agent, Non-Metals," and prohibiting Sinoma from "introducing evidence opposing Hawkeye Gold's contention that Non-Metals is an

agent or mere instrumentality of Sinoma."[3]  The district court entered an order denying that motion on July 12, 2022.  Two weeks later, the court entered an order dismissing Hawkeye Gold's Second Amended Complaint "[b]ecause this Court lacks personal jurisdiction over defendant."  Hawkeye Gold appeals the dismissal order.

On appeal, Hawkeye Gold argues that the district court erred in dismissing the Second Amended Complaint because (i) Sinoma waived its lack of personal jurisdiction defense; (ii) Sinoma is a party to the Contract and therefore bound by the contractual provision submitting to the exclusive jurisdiction of any court sitting in Des Moines, Iowa; (iii) evidence of agency and mere instrumentality supports personal jurisdiction; (iv) Sinoma has the minimum contacts required for specific personal jurisdiction; and (v) the district court erred in denying Rule 37 relief precluding Sinoma from raising a personal jurisdiction defense.

## II. Discussion

**A. Waiver.**  Federal Rule 12(h)(1)(A) provides that a party waives a personal jurisdiction defense by "omitting it from a motion in the circumstances described in Rule 12(g)(2)."  Rule 12(g)(2) provides:  "[A] party that makes a motion *under this rule* must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion" (emphasis added).  Relying on out-of-circuit decisions, Hawkeye Gold argues that Sinoma waived its right to contest personal jurisdiction by failing to raise this defense in its first motion to the district court, the motion to set aside the default entered by the Clerk of Court.

---

[3]In other words, Hawkeye Gold sought as a discovery sanction an order rejecting Sinoma's jurisdictional defense.  See Insurance Corp. of Ireland, LTD v. Compagnie des Bauxites de Guiner, 456 U.S. 694, 707-09 (1982).

We have never held that a party waives potential Rule 12(b) defenses by failing to include them in a motion to set aside a default.[4] The argument is contrary to the plain language of Rule 12(g)(2), which expressly limits its application to motions made after prior motions "made under *this rule*," meaning Rule 12 motions. Rule 55 governs default procedures. Rule 55(a) provides that the Clerk is *required* to enter a default against a party who fails to plead or defend once that failure is shown. When a default is entered, Rule 55(c) provides that it can be set aside upon a showing of good cause. A motion under Rule 55(c) is not a motion under Rule 12, nor does Rule 55 require a party to present defenses in seeking to set aside a default. It says nothing about defenses being waived if not raised. Thus, a Rule 55(c) motion to set aside a default does not trigger the waiver provisions of Rules 12(g)(2) and 12(h).

Rule 55(c) also provides that the court "may set aside a final default *judgment* under Rule 60(b)" (emphasis added). Most of the cases from other circuits on which Hawkeye Gold relies involved prior attacks on final default judgments. We express no view on that issue. We simply conclude that Sinoma's motion to set aside the default was not a Rule 12 motion, and therefore Sinoma preserved its personal jurisdiction defense by raising it in answers to Hawkeye Gold's complaints filed after the default was set aside for improper service.

**B. Personal Jurisdiction -- Threshold Procedural Issues.** "We review questions of personal jurisdiction *de novo*." Whaley v. Esebag, 946 F.3d 447, 451 (8th Cir. 2020). The burden of proof is on a plaintiff seeking to establish the district court's jurisdiction; this burden does not shift because the defendant challenges jurisdiction. Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992). However, Rule 12(b)(2) requires the defendant to assert a lack of personal jurisdiction

---

[4]Hawkeye Gold cites Nationwide Eng'g & Control Systems, Inc. v. Thomas, 837 F.2d 345 (8th Cir. 1988), to support its waiver argument, but that case concerned waiver of defenses in state court prior to removal, not waiver under the federal rules.

defense in its responsive pleading or by motion "before pleading." Thus, to survive a timely motion to dismiss for lack of personal jurisdiction, the plaintiff need only "make a prima facie showing that personal jurisdiction exists" by pleading "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state," which may be shown by submitting "affidavits and exhibits supporting or opposing the motion." K-V Pharm.Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quotations omitted). Because a prima facie showing is less onerous than meeting the burden to prove jurisdiction, we have repeatedly said that, "[w]here no hearing is held [on the motion to dismiss for lack of personal jurisdiction], we must view the evidence in the light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor." Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).

Hawkeye Gold argues the district court failed to follow this "minimal" standard for a threshold showing. But the question is not so simple, precisely because personal jurisdiction is a "threshold" issue in the litigation, and resolving the issue is not confined to the pleadings, as are prima facie requirements in other contexts. "Ultimately . . . a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence . . . . either at trial or at a pretrial evidentiary hearing." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016) (citations omitted). But the court noted, citing Fed. R. Civ. P. 43(c), that not all evidentiary hearings involve evidence taken orally in open court:

> As with many pretrial motions, a court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion. If the court deems it necessary or appropriate, *or if the parties so request*, it may conduct a hearing and receive, or not, live testimony. It may also consider jurisdictional evidence in the form of depositions, interrogatory answers, admissions, or other appropriate forms. But we see no reason to impose on a district court the hard and fast rule that it

must automatically assemble attorneys and witnesses when doing so would ultimately serve no meaningful purpose. . . .

At bottom, a district court properly carries out its role of disposing of a pretrial motion under Rule 12(b)(2) by applying procedures that provide the parties with a fair opportunity to present the court the relevant facts and their legal arguments before it rules on the motion.

Id. at 268-69 (emphasis added). The court in Grayson concluded that, if a district court conducts a hearing limited in this fashion, it may find *by a preponderance of the evidence* that it lacks personal jurisdiction. Id., followed in Sneha Media & Enter., LLC v. Assoc. Broadcating Co. P LTD, 911 F.3d 192, 197 (4th Cir. 2018). We agree. In our view this is not inconsistent with our prior panel opinions.

In this case, the district court noted at the start of its lengthy dismissal order that it "considers the motion to be fully submitted. Oral argument by counsel has not been requested and is not necessary." After reviewing in detail Hawkeye Gold's extensive pleadings, and the massive evidentiary submissions and legal arguments made by both parties, the court stated that it "has viewed the evidentiary materials presented by the parties in a light most favorable to Hawkeye Gold. In the opinion of the Court, Hawkeye Gold has not sufficiently met its burden of making a prima facie showing of personal jurisdiction over Sinoma."

On appeal, Hawkeye Gold complains that the court did not properly view the evidentiary materials in the light most favorable to a plaintiff resisting a Rule 12(b)(2) motion to dismiss. But Hawkeye Gold did not move for reconsideration of the dismissal order and request an evidentiary hearing or additional jurisdictional discovery. Four months earlier, in the Conclusion to its memorandum opposing Sinoma's motion to dismiss, Hawkeye Gold had urged denial and alternatively requested "discovery to resolve the jurisdictional dispute and . . . a hearing to the extent necessary." Sinoma then produced extensive discovery materials in response

-8-

to the court's order granting in part Hawkeye Gold's motions to compel. When the court denied Hawkeye Gold's motion for a Rule 37 sanctions order that would resolve the jurisdiction issue, two weeks before its dismissal order, Hawkeye Gold was on notice the court considered the record adequate to decide the Rule 12(b)(2) issue. If Hawkeye Gold considered the record inadequate, it should have renewed its request for a hearing or further discovery, or moved for reconsideration of the dismissal order on this ground. Applying the procedural framework of Grayson v. Anderson, we consider the record sufficient to require Hawkeye Gold to establish personal jurisdiction by a preponderance of the evidence. We will conduct our *de novo* review of the dismissal order accordingly.

**C. Personal Jurisdiction -- Merits Issues.** The Due Process Clause of the Fourteenth Amendment limits the authority of courts in this country to exercise personal jurisdiction over an out-of-state defendant. Daimler AG v. Bauman, 571 U.S. 117, 126 (2014), citing International Shoe Co. v. Washington, 326 U.S. 310 (1945). "Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" K-V Pharm. Co., 648 F.3d at 592 (quotation omitted). The defendant must purposefully avail itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). We analyze five factors and the totality of the circumstances in assessing minimum contacts: "(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." Kaliannan v. Liang, 2 F.4th 727, 733 (8th Cir. 2021), cert. denied, 142 S. Ct. 758 (2022). The first three factors are primary and carry more weight. Id.

Personal jurisdiction may be established by general jurisdiction, in which case the forum state has power to adjudicate any cause of action involving a particular defendant, or by specific jurisdiction, which "requires that the cause of action arise from or relate to a defendant's actions within the forum state," the third of the five due process factors. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir.), cert. denied, 562 U.S. 962 (2010). For the district court to exercise specific personal jurisdiction over Sinoma, Hawkeye Gold must show that jurisdiction is both authorized by Iowa's long-arm statute and permitted by the Due Process Clause. Fastpath, 760 F.3d at 820. In this case, Hawkeye Gold argues only that Sinoma is subject to specific jurisdiction in Iowa, so we need not address general personal jurisdiction. The Supreme Court of Iowa has interpreted its long-arm statute and rules to extend as far as due process allows, so our focus is on whether the district court's exercise of personal jurisdiction over Sinoma would comport with due process. See Hammond v. Fla. Asset Fin. Corp., 695 N.W.2d 1, 5 (Iowa 2005).

To establish specific personal jurisdiction, the defendant's contacts with the forum State "must be based on 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Creative Calling Solutions, Inc. v. LF Beauty Ltd., 799 F.3d 975, 980 (8th Cir. 2015), quoting Burger King, 471 U.S. at 474-75. For contractual claims, an out-of-state defendant's contract with a citizen of Iowa is insufficient. Whether defendant "purposefully established minimum contacts" requires evaluation of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. (quotation omitted). When the contract is between an Iowa exporter and the United States subsidiary of a foreign importer, this analysis is complex.

In resisting Sinoma's motion to dismiss, Hawkeye Gold argued to the district court that Sinoma's direct contacts with Iowa were sufficient to establish specific personal jurisdiction. It further argued that personal jurisdiction is properly asserted

-10-

because Non-Metals was acting as Sinoma's agent or alter-ego, citing allegations in the Second Amended Complaint that, "construed in favor of Hawkeye Gold, are sufficient for notice pleading of these claims." In reply to the agency claim, Sinoma argued Hawkeye Gold presented no evidence supporting a theory of piercing the corporate veil to establish personal jurisdiction. In its sur-reply, Hawkeye Gold argued that "evidence that multiple Sinoma employees traveled to Iowa to meet with Hawkeye Gold in connection with DDGS, and that [Jason] Mao -- one of the Sinoma employees who traveled to Iowa -- was a Sinoma employee at the time he negotiated and executed the contract, is more than enough to satisfy Hawkeye Gold's burden." The district court rejected this contention:

> To begin, the sales contract between Hawkeye Gold and Non-Metals is not a sufficient contact with Iowa to support personal jurisdiction over Sinoma. Foremost, Sinoma was not a party to the contract. Even when the dispute as to the role and employment of Jason Mao is viewed in favor of Hawkeye Gold, it remains as fact Sinoma was not a party to the contract.

**1. Was Sinoma a Party to the Contract?**[5] The Second Amended Complaint acknowledged that "[t]he Contract does not specifically name or identify Sinoma as the principal," but alleged that "Non-Metals executed the Contract while acting within the scope of its actual authority as an agent for its principal, Sinoma, binding Sinoma to the Contract." Being bound by a contract is of course not the same as being a named party to the contract. The district court concluded that the Contract

---

[5]The Contract includes a "Consent to Jurisdiction" provision in which each party "irrevocably submits to the exclusive jurisdiction of any United States or Iowa District Court sitting in Des Moines." "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001). Thus, Sinoma being a party to the contract is crucial *if* there is no other basis for specific personal jurisdiction.

by itself was not a sufficient contact to establish specific personal jurisdiction primarily because "Sinoma was not a party to the contract." On appeal, Hawkeye Gold argues that, because Non-Metals was acting as the agent of Sinoma, a disclosed principal, when it entered in the Contract, the district court erred in not finding that Sinoma is *a party to the sales Contract* despite only being named consignee and not signing the contract. This argument was not clearly made to the district court, nor did Hawkeye Gold move for reconsideration of the dismissal order on this ground.[6]

Under Iowa law, "an agency relationship exists when there is (1) 'manifestation of consent by one person, the principal, that another, the agent, *shall act on the former's behalf and subject to the former's control*,' and (2) 'consent by the latter to so act.'" Vroegh v. Iowa Dep't of Corrections, 972 N.W.2d 686, 707 (Iowa 2022) (emphasis added). For example, in Kanzmeier v. McCoppin, where a cattle buyer's agent testified that he "act[ed] as an agent for the man that is getting the cattle," receiving only a commission from the sale proceeds, the Court held this was sufficient evidence of a contract between the buyer and seller because "the order buyer acted on behalf of the plaintiff and was subject to his control and consent with regard to the purchase of the steers." 398 N.W.2d 826, 830 (Iowa 1987).

Personal jurisdiction was not at issue in Kanzmeier, and the agent was not a party to the contract at issue, as Non-Metals is in this case. Hawkeye Gold has cited no Iowa case even suggesting that, when a purchase contract is between a foreign buyer's United States agent and an Iowa seller, the foreign buyer *becomes a party to the contract* and is therefore subject to specific personal jurisdiction in Iowa because

---

[6]The reason may be that an agent acting for a disclosed principal is not liable as a contracting party. See Rowe v. State Tax Comm'n of Iowa, 91 N.W.2d 548, 554-55 (Iowa 1958). Thus, Hawkeye Gold's decision to sue Non-Metals for failure to pay under the Contract was inconsistent with this new claim on appeal. Perhaps we would need to vacate the default judgment if we upheld the claim that Sinoma was a party to the contract. We need not consider this issue.

the buyer, named as consignee of the goods to be shipped, was a disclosed principal, even if the agent was not subject to the principal's control. This is not Iowa law, nor is it consistent with Eighth Circuit precedent:

> Our cases consistently have insisted that "personal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."

Viasystems, Inc. v. EBM-Papst St. Georgen GMBH, 646 F.3d 589, 596 (8th Cir. 2011), quoting Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648-49 (8th Cir. 2003).

It is common for foreign importers to use U.S. subsidiaries or purchasing agents in effecting international export/import transactions, in part because both the United States seller and the foreign buyer "fears [breach of contract] litigation in the other party's 'home court.'" Moog, 90 F.3d at 1385. Adopting Hawkeye Gold's unprecedented contention -- that the purchase of Iowa agricultural products by such an agent *without more* makes the foreign buyer a party to a breach-of-contract action and therefore subject to the jurisdiction of Iowa courts -- could have a disastrous impact on this important part of Iowa's economy. Foreign buyers will simply purchase agricultural products from U.S. sellers in another State or from sellers in a foreign country that does not impose this potentially significant cost. Avoiding unfavorable dispute resolution requirements -- a form of non-tariff barrier -- is a significant part of international economic competition. Therefore, we conclude the Supreme Court of Iowa would not adopt this contention. Moreover, even if consistent with Iowa law, the contention does not satisfy governing due process standards. A foreign corporation with no other minimum contacts with Iowa does not "reasonably anticipate being haled into court there" when it receives goods shipped

-13-

abroad by its U.S. subsidiary but was not a named party in the purchase agreement. As the Supreme Court has repeatedly cautioned, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi Metal Ind. Co. v. Superior Court of Cal., 480 U.S. 102, 115 (1987) (quotation omitted); see Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 376 (8th Cir. 1990).

Hawkeye Gold also argues that Sinoma is judicially estopped to argue it was not a party to the Contract because Sinoma admitted Non-Metals was its agent in its motion to set aside the first default. This contention is without merit. "Whenever a party takes a position in a legal proceeding and succeeds in maintaining that position, the doctrine of judicial estoppel operates to prevent that party from later assuming a contrary position." Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist., 29 F.4th 406, 410 (8th Cir. 2022). In arguing to set aside the default, Sinoma's counsel summarized allegations in Hawkeye Gold's Complaint that a principal-agent relationship existed between Sinoma and Non-Metals and argued that, even if true, service of process on Sinoma was not effective because Non-Metals was not its *general* agent. This was not an admission that Non-Metals was Sinoma's agent when entering into the Contract with Hawkeye Gold. Judicial estoppel does not apply.

**2. Was Non-Metals the Alter-Ego or Mere Instrumentality of Sinoma?** Iowa law recognizes a corporate subsidiary's separate corporate identity but "under exceptional circumstances" will disregard a subsidiary's separate identity -- *i.e.*, pierce the corporate veil -- "where doing so would prevent the parent from perpetuating a fraud or injustice, evading just responsibility or defeating public convenience." Briggs Transp. Co., Inc. v. Starr Sales Co., Inc., 262 N.W.2d 805, 809-10 (Iowa 1978). Applying that principle, we have held that personal jurisdiction may be based on the activities of a nonresident's in-state subsidiary "if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded." Epps, 327 F.3d at 649. Hawkeye Gold argues that Non-

-14-

Metals was Sinoma's alter-ego; therefore, the corporate veil can be pierced and Non-Metals' contacts in Iowa attributed to its parent, Sinoma.

Based on the extensive Rule 12(b)(2) record, the district court rejected this contention:

> Hawkeye Gold has not presented factual evidence showing Sinoma controlled and dominated the affairs of Non-Metals to the extent Non-Metals was acting as Sinoma's alter ego. . . . Instead, the evidence shows Sinoma as a parent company in China was buying product from a wholly owned subsidiary in the United States which had contracted with an Iowa company to obtain the product. Such circumstances do not equate to an alter-ego relationship.

On appeal, Hawkeye Gold argues that substantial evidence shows Non-Metals was "merely a buying office," did not have significant assets, had managers employed only by Sinoma, and allegedly obeyed Sinoma's directive to stop paying Hawkeye Gold. Sinoma responds that Non-Metals maintained a separate business; it sold to many customers in addition to Sinoma and marked up prices to generate profits on products sold to Sinoma. After *de novo* review of the record, we conclude that Hawkeye Gold failed to prove by a preponderance of the evidence that the district court has specific personal jurisdiction because of "exceptional circumstances" that permit the court to disregard subsidiary Non-Metals' separate identity under Iowa law.

**3. Did Sinoma Itself Have Sufficient Minimum Contacts?** It is undisputed that Sinoma is registered and incorporated in China, with a principal place of business in Beijing; does not lease or own property in Iowa; does not sell or advertise products in Iowa; does not hold assets or accounts in Iowa; and does not maintain a registered agent or license to do business in Iowa. At the time in question, Sinoma owned Non-Metals, a United States subsidiary based in Illinois that regularly purchased DDGS

from Hawkeye Gold in Iowa that was then shipped to consignee Sinoma in China. Hawkeye Gold seeks to recover from Sinoma an unpaid default judgment entered in Hawkeye Gold's prior breach of contract action against Non-Metals, an action in which Hawkeye Gold elected not to join Sinoma as an additional party defendant.

As we have explained, we reject Hawkeye Gold's contention that Sinoma was a party to the Contract, so personal jurisdiction may not be based on the "Consent to Jurisdiction" provision in the Contract. In addition, Hawkeye Gold has failed to show that Sinoma is responsible for Non-Metals's breach of contract because Non-Metals was an alter-ego whose separate corporate identity may be disregarded under Iowa law. So on what other basis may specific personal jurisdiction over Sinoma be exercised? Hawkeye Gold argues that Sinoma had sufficient minimum contacts to the transaction to establish specific personal jurisdiction -- it twice sent Sinoma employees to Hawkeye Gold's Iowa facility to ensure that Hawkeye Gold's DDGS met Sinoma's standards; Jason Mao, who was a Sinoma "Senior Business Manager" from December 10, 2012 to December 9, 2015, negotiated the Contract between Hawkeye Gold and Non-Metals; in January 2014, bypassing direct seller Non-Metals, Sinoma requested $20,000 compensation for defective DDGS purchased from Hawkeye Gold; Sinoma allegedly directed Non-Metals not to pay Hawkeye Gold's contract damages when the DDGS was diverted; and Sinoma representatives visited Hawkeye Gold in 2015 to resolve Hawkeye Gold's dispute with Non-Metals.

"For contractual claims, personal jurisdiction is proper where the defendant reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state." Creative Calling, 799 F.3d at 980, quoting Burger King, 471 U.S. at 473. Here, the district court noted, "[t]he evidentiary materials presented to this Court fall short of showing Sinoma, as opposed to its United States subsidiary Non-Metals, reached out and created continuing relationships and obligations within Iowa." The question is whether *Sinoma* reached out and created relationships within Iowa. As Sinoma was not a party to the Contract, and Non-

-16-

Metals was not its alter-ego, the answer is clearly no. The only relationships created *in Iowa* was an ongoing course of dealing between Non-Metals and Hawkeye Gold to send products *out of* Iowa. This relationship had no continuing impact on the forum State and its citizens, other than providing a forum to resolve a specific contract dispute between Hawkeye Gold and a party over which specific personal jurisdiction may be exercised with regard to that transaction, here, Non-Metals. Moreover, stripped of Hawkeye Gold's agency theories of liability, this lawsuit is not a claim based on *Sinoma's* breach of a contract with Hawkeye Gold. It is a claim for refusing to pay a default judgment entered against its separate, now-defunct U.S. subsidiary. Thus, there is no relation between Sinoma's alleged minimum contacts and the cause of action asserted in this action,[7] the essential third due process factor that Hawkeye Gold must prove by a preponderance of the evidence to establish specific personal jurisdiction. See, e.g., Wells Dairy, 607 F.3d at 518. The district court properly rejected this theory of specific personal jurisdiction over Sinoma.

**D. The Denial of Rule 37 Relief.** Hawkeye Gold argues the district court abused its discretion in denying its motion for an order establishing that "Sinoma is liable as principal for the acts of its agent, Non-Metals" and barring Sinoma from introducing evidence contesting Hawkeye Gold's "contention that Non-Metals is an agent or mere instrumentality of Sinoma," as sanctions for Sinoma's alleged discovery failures. See Fed. R. Civ. P. 37(b)(2)(A). In denying this relief, the district court properly noted that it has "wide latitude in imposing sanctions" for discovery violations, but its "discretion narrows as the severity of the sanction or remedy it elects increases." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008). Here, whether Sinoma is liable as principal for the acts of its agent, Non-Metals, "is a key

---

[7]As the district court noted, that Sinoma representatives visited Hawkeye Gold in 2015 to resolve Hawkeye Gold's dispute with Non-Metals "fails to support personal jurisdiction over Sinoma." See Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 524 (8th Cir. 1996).

central determination in this case, encompassing both factual matters and legal principles on which the parties have firm divergent views." Without "excus[ing Sinoma's] failure to obey its orders or to fully respond to discovery requests," the court concluded that "the record before the Court does not sufficiently establish conduct by Sinoma which warrants the relief sought." Our review of the record strongly supports this conclusion. Our review of Rule 37 sanctions is deferential, but when the sanction imposed is "tantamount to a dismissal of [the imposing party's] claims," the district court should "consider[] the possibility of lesser sanctions," such as granting a continuance or imposing monetary sanctions relating to discovery abuse. Heartland Bank v. Heartland Home Fin., Inc. 335 F.3d 810, 817 (8th Cir. 2003). Here, lesser sanctions were clearly available, yet Hawkeye Gold requested a sanction eliminating Sinoma's personal jurisdiction defense, which we have now upheld on the merits. There was no abuse of the district court's discretion in denying this Rule 37 sanction relief.

The judgment of the district court is affirmed.
_____

-18-